ERNEST I. WHITE, Respondent, v. CLIFFORD L. MILLER,
Appellant.

**Mines and minerals — construction and definition of exception,
from lands conveyed, of "mines and minerals."**

A grant, or an exception, of "minerals" will include all inorganic sub-
stances which can be taken from the land, and to restrict the meaning
of the term there must be qualifying words, or language, evidencing
that the parties contemplated something less general than all substances
legally cognizable as minerals.

A conveyance of lands excepted "mines and minerals which are not
hereby intended to be conveyed." This is a clear and unambiguous
expression by the grantor that a part of his estate is not granted and
cannot be construed as a mere reservation from the grant of rights over
or in relation to the estate. That he meant to except what could be
legally defined as minerals is plain and the only qualification is of
minerals not obtainable by mining; hence, gypsum was included in
the exception while limestone passed as part of the surface of the
land.

A reservation in a deed to plaintiff which excepted minerals which
plaintiff's grantor did not own, did not preclude plaintiff from
afterward acquiring title to the excepted property, and he can main-
tain an action in equity to restrain defendant, in favor of whose grantor
the reservation was made, from entering upon the land and removing
the minerals therefrom.

*White* v. *Miller*, 134 App. Div. 908, affirmed.

(Argued October 11, 1910; decided November 15, 1910.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the fourth judicial department, entered
July 13, 1909, affirming a judgment in favor of plaintiff
entered upon the report of a referee.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*C. W. Andrews* for appellant. The facts found by the
referee clearly indicate that there was no intention on the
part of the parties to the Wickham deed of 1814 that the
grantor should retain the gypsum, and they wholly fail to

sustain the referee's conclusion that gypsum was covered by the exception. The court is bound as a matter of law, if it has any doubt as to the intention of the parties to the deed, to find in favor of the grantee Otis and against the grantor Wickham. (*French* v. *Carhart*, 1 N. Y. 96; *Woolsey* v. *Funke*, 121 N. Y. 87; *Nichol* v. *Sands*, 131 N. Y. 19; *Mount* v. *Hambley*, 33 App. Div. 103; 164 N. Y. 601; *Ins. Co.* v. *Dutcher*, 95 U. S. 269; *Dexter* v. *Beard*, 130 N. Y. 549; *Bridger* v. *Pierson*, 45 N. Y. 601.) The words "mines and minerals," when used in conjunction, have a limited meaning and are restricted to underground excavations and to minerals obtained from such excavations. These words, therefore, in the Wickham deed of 1814 did not apply to gypsum, which was only obtained in New York state at that time by open quarrying. (*Armstrong* v. *L. C. G. Co.*, 147 N. Y. 495; *Brady* v. *Smith*, 181 N. Y. 182; *U. S.* v. *B.*, etc., *Co.*, 78 Fed. Rep. 110; *Murray* v. *Allred*, 110 Tenn. 100; *Dunham* v. *Kirkpatrick*, 101 Penn. St. 36; *Kelly Co.* v. *Ohio Co.*, 67 Ohio St. 317; *Wakefield* v. *Fargo*, 90 N. Y. 218.) The referee's finding that it was not the intention of the Adamant Manufacturing Company of America to except from its conveyance of 1894 limestone is clearly erroneous. (*Underhill* v. *Vandervoort*, 56 N. Y. 242; *White's Bank* v. *Myles*, 73 N. Y. 335; *Ruiz* v. *Renauld*, 100 N. Y. 256; *Smyth* v. *B.*, etc., *R. Co.*, 193 N. Y. 335.) The clause in the deed of Wickham, viz., "Excepting all mines and minerals," etc., is a reservation and not an exception, and as this clause in his deed of 1814 contained no words of inheritance Wickham retained a life estate only in the mines and minerals, and the plaintiff here obtained no title under the deeds from the heirs and devisees of Wickham. (3 Washb. on Real Prop. [6th ed.] 424; 1 Devl. on Deeds, § 222; *Curtis* v. *Gardner*, 13 Metc. 457; *Ashcroft* v. *R. R. Co.*, 126 Mass. 196; *Dean* v. *French*, 146 Mass. 229; *Simpson* v. *R. R. Co.*, 176 Mass. 359; *Honbeck* v. *Westbrook*, 9 Mass. 73; *Schafer* v. *Thompson*, 116 App. Div. 775; *Bridger* v. *Pierson*, 45 N. Y. 601; *Smith* v. *Cornell*, 45 N. Y. Supp. 640; 1 Jones

on Real Prop. § 506; *Craig* v. *Wells*, 11 N. Y. 315; *Morrison* v. *Banks*, 88 Me. 155.) In the deed of 1894 from the Adamant Manufacturing Company of America West covenanted and agreed that the grantor, its successors and assigns, was to have the right to work, mine and carry away the "gypsum, or plaster and minerals," and the plaintiff here, West's successor in title, is bound by said covenants and agreements. The deed from West to the plaintiff in 1905 not only gave to the latter actual notice of the covenants contained in the prior deed, but also contained independent covenants in favor of said Adamant Company made by and which were binding on the plaintiff. (*Tallmadge* v. *E. R. Bank*, 26 N. Y. 105; *Hodge* v. *Sloan*, 107 N. Y. 244; *P. Ins. Co.* v. *C. Ins. Co.*, 87 N. Y. 400; *Town* v. *Needham*, 3 Paige Ch. 545; *Mygatt* v. *Coe*, 142 N. Y. 89; *Lovering* v. *Lovering*, 13 N. H. 573; *G. A. R. Co.* v. *Harrison*, 12 C. B. 576; *Post* v. *Weil*, 115 N. Y. 361; *Arthur* v. *Case*, 1 Paige, 447; *Hale* v. *Finch*, 104 U. S. 261.) The plaintiff is estopped from claiming any right, title or interest in the gypsum or minerals on the land in question. (*Van Rensselaer* v. *Kearney*, 11 How. [U. S.] 325; *Kingsland* v. *Mayor, etc.*, 35 Hun, 458; *S. M. Church* v. *Humphrey*, 142 N. Y. 137.)

*Jerome L. Cheney* for respondent. The exception in the deed from Wickham to Otis in 1814 in the following words: "With the exception of mines and minerals, which are hereby not intended to be conveyed," is clear, certain and unambiguous. The exception included gypsum with other minerals and severed the mineral estate from the surface estate. The mineral estate remained vested in Wickham and his devisees. Plaintiff White has acquired by deeds for a valuable consideration twenty-four forty-seconds of this mineral estate from Wickham's devisees and is the owner thereof. (*Marvin* v. *B. I. M. Co.*, 55 N. Y. 538; *Schoonmaker* v. *Hoyt*, 148 N. Y. 425; *Van Nostrand* v. *Moore*, 52 N. Y. 12; *Midland Railway Co.* v. *Robinson*, L. R. [15 App. Cas.] 19; *Earl of Rosse* v. *Wainman*, 14 M. & W. 859; *Coleman* v. *Coleman*,

1 Pears. [Penn.] 470 ; *Williams* v. *S. P. Oil Co.*, 52 W. Va. 181 ; *Murray* v. *Allred*, 100 Tenn. 100 ; *N. P. R. Co.* v. *Soderberg*, 99 Fed. Rep. 506 ; 188 U. S. 534 ; *Hartwell* v. *Camman*, 10 N. J. Eq. 128.) The exception in the deed of the Adamant Manufacturing Company of America to West in 1894 was not sufficiently broad to retain title in it to the limestone on the nineteen-acre piece, and the referee properly so found. (*Coleman* v. *M. B. I. Co.*, 94 N. Y. 233.) The respondent was not estopped by the exception in the deed of 1894 from the Adamant Manufacturing Company of America to George West from acquiring the outstanding Wickham title of 1814 under which he claims the minerals. (*Thompson* v. *Simpson*, 128 N. Y. 270 ; *Hetcher* v. *Holmes*, 25 Ind. 469 ; *Hill* v. *Epery*, 31 Penn. St. 334 ; *Jewett* v. *Miller*, 10 N. Y. 406 ; *Anderson* v. *Blood*, 152 N. Y. 293 ; *Claffin* v. *B. & A. R. R. Co.*, 157 Mass. 497 ; *Bybee* v. *O. & C. R. R. Co.*, 139 U. S. 663 ; *Sparrow* v. *Kingman*, 1 N. Y. 242 ; *Lytle* v. *Beveridge*, 58 N. Y. 592 ; *Douglass* v. *Cruger*, 80 N. Y. 15, 20.)

GRAY, J. The action is in equity to restrain a continuing trespass and the issue between the parties is as to the ownership of the minerals contained within a tract of nineteen acres of land, forming part of the plaintiff's lands, in Onondaga county, in this state. The result of the trial was a judgment in the plaintiff's favor and against the defendant ; awarding to the former a sum of money by way of damages for entering upon his lands and cutting down a number of trees thereon. An injunction was granted against the continuance of such acts and against removing limestone, or quarrying, mining, or removing gypsum, or plaster. The trial was had before a referee and the judgment entered upon his decision has been unanimously affirmed by the Appellate Division. The mineral product, whose commercial value has given importance to the controversy, is gypsum and the question of its ownership is, in my opinion, to be answered upon a consideration of the effect of an early conveyance, by which an

estate in the minerals underlying lands was severed from the general estate of the grantor in the property affected. The land in controversy formed part of a large tract in the township of Manlius, which, at an early day, was the subject of a grant by the state under letters patent; the title to which, in 1799, was determined to be in George D. Wickham. In 1814, Wickham made a conveyance to David Otis of a portion of the tract, which included the parcel in question, *"with the exception of mines and minerals, which are not hereby intended to be conveyed."* Otis conveyed a part of the same tract to another, "subject, however, to such rights and interests as were excepted and retained by George D. Wickham," and, by mesne conveyances, those lands came into the ownership of the Adamant Manufacturing Company. In 1894, this company conveyed them to George West, "excepting and reserving, however, to the party of the first part, (grantor), its successors and assigns, all the gypsum, or plaster, and minerals in and upon " the parcel of nineteen acres in question. The company's conveyance reserved to it the right and privilege "of working, mining and carrying away said gypsum, plaster and minerals and, for this purpose, of entering upon    *    *    *    said premises." By appropriate agreements in the conveyance, its rights to use the premises in all ways incidental to working and mining were secured. In 1905, West conveyed the lands to the plaintiff by a deed, which excepted and reserved to the Adamant Manufacturing Company all the gypsum, or plaster, and minerals in and upon the parcel of nineteen acres and the various rights and privileges, as they were specified in the company's deed to the grantor. In 1906, the plaintiff, by deeds from devisees of Wickham, in whom, by the terms of his will, had vested all his residuary estate, acquired a majority interest in the mines and minerals which the testator had excepted and retained in his deed to Otis. In the same year, the defendant acquired, through various mortgages, foreclosures and deeds, a conveyance of those rights and interests of the

3

Adamant Manufacturing Company, which were described in its deed to West as the subjects of exception and reservation, and by a substantially similar description.

The estates in the surface of the land and in the minerals lying underneath, which were formerly in Wickham, and which he severed by his deed, would appear to have become reunited in the plaintiff. The counsel for the appellant, with industry and ability, has elaborately argued that minerals, in the broadest sense of the word, were not intended to be excepted by Wickham's deed; that gypsum was not included within the exception of "mines and minerals;" that under the Adamant Company's deed, in 1894, title to the limestone did not pass and that, by force of the terms of West's deed to the plaintiff, which excepted and reserved to the Adamant Company, West's grantor, the gypsum and minerals in the land, the plaintiff had covenanted and agreed that the company should have the title to them. The appellant contends that he had acquired from his predecessors in interest, through Wickham's conveyance, the title to the gypsum, as well as the limestone; inasmuch as, briefly stated, upon authority, no distinction should be made between the two substances, in construing the grant.

It has been decided, below, that Wickham's deed did except from the grant his title to all mines and minerals, including gypsum, but not the limestone; that the plaintiff had become the owner of a majority interest in the minerals, including gypsum, through the deeds from Wickham's devisees, and, through the conveyances of the Adamant Company and of West, was the owner of the surface of the farm lands, including the limestone, and that he was not estopped from claiming title to all minerals.

I think that the courts below have determined the issue between the parties correctly and have applied the right rule under the decisions. As has been suggested, the determination of the controversy must turn upon the effect of the language of the exception in Wickham's deed, to wit: " excepting mines and minerals which are not hereby intended

to be conveyed." This is a clear and unambiguous expression, or assertion, by the grantor that a part of his estate in the lands was not granted. It was an exception of a portion of the premises described as granted. It cannot be construed as a mere reservation from the grant by the grantor of rights over, or in relation to, the estate. The subject of exception is not of some right to mine; it is the property in the minerals, which the land contains, and in the mines from which they may be obtained. If there was doubt about the meaning, it would, properly, be resolved in favor of the grantee; but the language is too precise to allow of doubt that the intent of the instrument was understood to be to except that part of the estate comprehended within the description of "mines and minerals." When we come to consider how comprehensive is the term "minerals," then, we are to be guided by the nature of the transaction and by the construction to be given to the term, when used in conjunction with mines, under the authority of decisions of this court. The term "minerals" would, speaking generally, signify all natural inorganic bodies.

What Wickham conveyed to Otis, in 1814, was a large tract of farm lands, on a small portion of which deposits of gypsum have been found. Bordering upon this portion are other gypsum deposits, which the defendant has been working for some years. This mineral is a sulphate of calcium and has become an important article of commerce; its use being, formerly, for fertilizers and land plasters, and, more recently, for the manufacture of cement and for kindred purposes. It appears to have been first discovered in the locality in 1812 and there is evidence of the conveyance, or leasing, of gypsum rights in 1814; although the first removal of gypsum from this land is found to have been in 1842. As a mineral, it appears that it has been taken out by open quarrying; but it can be obtained by mining, as distinguished from quarrying. It is shown to have been mined at points in this state since 1844 and, according to the evidence, the date when it was first mined is not known. It underlay the limestone

formation upon the premises, in ledges, at a depth of from twenty-five to forty feet, and, in places, rose in the form of caps to within a foot, or eighteen inches, of the surface of the soil. When taken from the land, it appears to have been worked by quarrying, after the limestone covering it had been first blasted away; but it would seem to be clear, where the mineral formation underlies a bed of limestone at such a depth and is, itself, of great depth, that it would, more scientifically, if not ordinarily, be obtained by subterranean work, or excavation. Whether, or not, gypsum was particularly in Wickham's mind at the time of his grant to Otis, we cannot say. There is nothing to show that mineral ores were ever found in the vicinity and there is little to show why the broadness of the exception in Wickham's deed should be restricted. That he meant to except what could be legally defined as minerals is plain and the only admissible qualification, in that respect, would be minerals that were not obtainable by mining. The referee concluded that he did not intend to except limestone; but that he did so intend as to all other minerals. As the record does not show that any opinion was expressed by him, or by the justices of the Appellate Division, we may infer that the conclusion was reached upon the reasoning that the conjunction of "mines and minerals" evidenced the intent to except, only, those inorganic substances, which might be taken from the land by the processes of mining. As limestone was a part of the surface of the land, covered, only, by the surface soil, it would, naturally, be quarried; while, however possible to quarry gypsum, after removing the limestone, it might be mined. For this construction, there is more or less precise authority in the case of *Brady* v. *Smith*, (181 N. Y. 178). Before referring more particularly to our decision in that case, it may be well to observe that, within the decisions of the English courts, as by our own, a grant of the minerals in land will include all such as are obtainable beneath the surface of the soil for the purpose of profit; in the absence of language, or of circumstances, which would make a limitation of its import reasonable. In

*Hext* v. *Gill*, (L. R. [7 Ch. App.] 699), an important English case, the grant reserved " all mines and minerals within and under the premises with full and free liberty * * * to dig, and search for, and to take, use, and work the said excepted mines and minerals." A bed of china clay was discovered under the land ; a substance not known to have existed in that particular part of England. It was held to have been included in the reservation and that, as the result of the authorities which were considered, a reservation of " minerals " was so sweeping as to embrace all inorganic substances, which might be found underneath the surface and which could be worked at a profit; unless otherwise limited. It was, there, considered that coupling " mines " with " minerals " did not limit the meaning of the latter word ; as minerals would include open quarrying, as well as subterranean working. (See, also, *Midland Rwy. Co.* v. *Checkley*, L. R., [4 Eq. Cas.], 19.) The doctrine of that case, and of the other English cases, which followed it, was deemed authoritative by this court in *Armstrong* v. *Lake Champlain Granite Co.*, (147 N. Y. 495), in construing the word " minerals " in a grant, and the term was held to be all embracing in its reference to " anything mineral in character, which can be got by mining." In that case, it was sought to restrain the quarrying of granite and the decision turned upon the interpretation to be given to the words " minerals and ores " in a deed. It was held that granite would be embraced in such a grant, in the absence of words of qualification, and that it would be " an unwarrantable limitation of such a grant or reservation, to exclude from its operation beds of coal or other non-metallic mineral deposits of commercial value, *or to confine it to such minerals as were known or supposed to be on the premises at the time.*" (p. 505.) A grant, or reservation, of minerals in a deed was deemed by us to contemplate any description of valuable mineral, which would come within the legal meaning of the word and which " might thereafter be discovered." In that case, the context indicated, however, that the parties had in view, only, such minerals, as were obtainable by underground mining and, therefore, that granite, which was obtain

able by open quarrying, did not pass under the grant of
" minerals and ores." I may, briefly, observe that the quali-
fying language was in the granting of special rights for the
purpose of making the grant effectual. The specification of
those rights showed them to be such as were essential to, and
connected with, usual mining operations and included a grant
" of sufficient land to erect suitable buildings for machinery
and other buildings necessary and usual in mining and
raising ores." Obviously, the parties could not have intended
granite. Considering, then, the case of *Brady* v. *Smith*,
(181 N. Y. 178), which, as I infer, has influenced . the deter-
mination below and which is authoritative, we find the language
in the deed to have raised the question before the court, whether
limestone was excluded from the grant. The language was :
" excepting and reserving therefrom    *    *    * all mines and
minerals which may be found on the above piece of land, with
the right of entering    *    *    * to dig and carry the same
away." (p. 179.) The language was construed as not includ-
ing the limestone ; that being a substance upon, and a part of,
the surface of the land, which was removable by quarrying.
The principle of the decision was that though the word " min-
erals," of itself, might, when broadly defined, embrace the soil
and all that is found beneath the surface, " under a definition
coupling it with mines it covers all substances taken out of the
bowels of the earth by the processes of mining." (p. 185.) It is
true that the context furnished qualifying words in "found" and
" dig;" but they were not controlling words ; serving, rather,
to emphasize the interpretation given to " mines and minerals."
It was thought to be a " strained and unnatural construction "
to assume that the words referred to the boulders and ledges
of limestone, cropping out of the surface of the land. This
decision introduced a qualification of the English doctrine ;
inasmuch as the coupling of mines and minerals, contrary to
what was considered in *Hext* v. *Gill*, (*supra*), was regarded as
restricting the broadness of the meaning of the latter word.
I think that the case is an authority, which should be fol-
lowed in the present case, and, therefore, while the gypsum

was retained by Wickham, the limestone passed as part of the surface.

The rule, as it stands upon the authority of the decisions of this court, is that a grant, or an exception, of " minerals," will include all inorganic substances, which can be taken from the land, and that to restrict the meaning of the term, there must be qualifying words, or language, evidencing that the parties contemplated something less general than all substances legally cognizable as minerals. I conclude, therefore, that in Wickham's deed to Otis every mineral was excepted but the surface limestone ; that Otis' grantee and successors in interest took, only, the surface of the land, including its limestone, and that the ownership of both estates in the soil and in the minerals is in the plaintiff. If the limestone passed to the grantee under the terms of Wickham's conveyance to Otis, then, equally, it passed to the grantee of the Adamant Company by its conveyance. We have held that Wickham's deed is not to be construed as excepting that substance and that construction is demanded of the company's deed to West.

It is argued that, in the conveyance by the Adamant Company to West, the grantee entered into covenants respecting the grantor's right to the gypsum and minerals ; which, by the terms of the deed to the plaintiff, were repeated as covenants by him. There was no covenant by West and none by the plaintiff upon the subject. Whatever there was is contained in the exception of the grant and that contains no agreement as to title. If the company did not own the substances beneath the soil, its exception amounted to nothing. The plaintiff did enter into certain express covenants in the instrument of conveyance; but not with respect to the minerals claimed by the company. If an equitable agreement might be implied, it would not help out the grantor's lack of title ; however it might, in a proper case, work by way of estoppel. If neither the company, nor West, nor the plaintiff, had title to the minerals covered by Wickham's exception, then neither West, nor the plaintiff, was concluded by the acceptance of his deed. Neither was precluded from afterwards acquiring

title to the excepted property and neither was estopped from denying that the company had title. In *Champlain & St. L. R. R. Co.* v. *Valentine*, (19 Barb. 484), a well-considered case, the grant was of land under water, reserving a certain " building * * * which remains vested " in the grantee. The grantor's title to the building failed as to a part and, subsequently, the plaintiff acquired title to it. It was held that the exception, or reservation, left the building as though not part of the grant and that there was no covenant by force of the exception. If neither grantor, nor grantee, had title to the building " accepting the deed did not prevent Webb, (the grantee), or any one holding under him," it was said, " from afterwards acquiring title to the excepted piece from some other source." As, under the construction given to Wickham's deed, the gypsum and other minerals excepted did not pass to Otis, the Adamant Company's predecessor in title, that company never was their owner and the plaintiff was not concluded by a recital of what was claimed by the grantor in the excepting clause and was at liberty to acquire the outstanding title. If the company did not own the gypsum, the excepting clause was meaningless and while, in an action upon the deed, it is possible its language might be relied upon as constituting an estoppel, this was not such an action and the relief sought did not, in any respect, depend upon the company's conveyance to West, or upon his to the plaintiff.

For these reasons, I advise the affirmance of the judgment appealed from.

CULLEN, Ch. J., WERNER, WILLARD BARTLETT and CHASE, JJ., concur; HISCOCK, J., not voting.

Judgment affirmed, with costs.