# Staunton

## H. B. BEURY, ET ALS. v. H. B. SHELTON AND H. L. PHLEGAR.

September 20, 1928.

The opinion states the case.

*Arthur B. Hodges, Price, Smith & Spilman* and *Greever & Gillespie,* for the appellants.

*W. B. Snidow, W. J. Henson, Hall & Buford, Martin Williams, M. P. Farrier* and *Tazewell Taylor,* for the appellees.

West, J., delivered the opinion of the court.

By deed dated January 21, 1901, J. L. Beury and wife conveyed to H. B. Shelton and H. L. Phlegar two certain tracts of land on New river in Giles county, Virginia, subject to the following exceptions and reservations, set forth in the deed: "* * * excepting and reserving from this conveyance to the male party of the first part in the two said tracts of land, all the metals and minerals of every kind and character whatsoever in and underlying the entire body of said two tracts of land hereby conveyed, together with the right at all times to enter upon the said tracts of land and to excavate therein and thereon for such metals and minerals, and the right to mine, dig and remove from said tracts of land all such metals and minerals, and the right to ingress, egress and regress over and through said lands for the purpose of mining, digging and removing therefrom any and all metals and minerals therein and thereon, said mining, digging and removing the metals and minerals from said lands to be done with as little injury to the growing crops of the parties of the second part, and their assignees and tenants, as conveniently and reasonably may be."

Upon the death of J. L. Beury his interest in the property and property rights reserved in the deed descended to his heirs at law.

On February 12, 1916, Phlegar and Shelton entered into a contract of lease with C. A. Klotz by which they leased to Klotz for eight years, with the privilege of an extension, the Beury tract and an adjoining tract of

land owned by Phlegar and Shelton. This lease gave Klotz, his heirs and assigns, the right to quarry and remove limestone from said lands at a cost of one cent per cubic yard.

Subsequently, Klotz assigned all his interest in the lease to the Virginian Limestone Corporation.

On July 25, 1918, the heirs at law of J. L. Beury entered into an agreement with the Virginian Limestone Corporation, by which they conveyed to the corporation "the exclusive right to quarry and remove, within the time, in the manner and upon the terms and conditions hereinafter set forth, all the limestone in and underlying all those two certain tracts of land situate, lying and being on New River, in Giles county, Virginia, being the same land conveyed by the deed of January 21, 1901," above mentioned.

The Virginian Limestone Corporation quarried and removed limestone from the land from the date of the agreement to date of the commencement of this suit and paid therefor the royalties therein provided for.

The contract of July 25, 1918, contained the following clause: "The party of the second part, during the continuance of the right herein granted, or any renewal thereof, shall have all such rights and privileges, except as herein restricted, and no other, to quarry and remove the limestone in and underlying the lands therein described and to enter upon said lands for such purposes, as are vested on the parties of the first part by virtue of the reservation and exception contained in the said deed from Joseph L. Beury and Julia A. Beury, his wife, to N. B. Shelton and H. L. Phlegar, as aforesaid, or by operation of law; it being the intention of the parties hereto that the parties of the first part shall grant hereby to the party of the second part only such rights, and in no event in excess of the rights

herein expressly set out, as are vested in the said parties of the first part to quarry and remove the limestone in and underlying the lands herein described."

On May 4, 1918, H. B. Shelton and Sallie A. Shelton, his wife, conveyed to H. L. Phlegar the undivided one-half interest of H. B. Shelton in the two tracts of land containing in the aggregate about 680 acres, which were conveyed to Shelton and Phlegar by J. L. Beury and wife. The rights reserved by J. L. Beury in the deed of January 21, 1901, are expressly excepted, and it is further provided that Shelton and Phlegar shall "jointly retain and share equally all rights, benefits, rents, royalties and income to accrue from existing contracts between them and C. A. Klotz until the termination of said contracts."

On May 4, 1921, H. L. Phlegar and wife conveyed to C. A. Klotz 117 acres of land, being a part of the land conveyed to Shelton and Phlegar by J. L. Beury on which the plant of the Virginian Limestone Corporation was located and from which they were removing limestone.

This suit was instituted under the attachment statute. The petition was filed on November 6, 1925, by H. L. Phlegar and H. B. Shelton, plaintiffs, against the living heirs at law of J. L. Beury, deceased, the personal representatives of those who are dead, C. A. Klotz and Virginian Limestone Corporation, defendants. The plaintiffs allege that the reservation in the deed of January 21, 1901, from Phlegar and Shelton, did not include the limestone on the tracts of land thereby conveyed, and that the fee simple title to the land was conveyed to them. The petition prays that the court so adjudge and also decree that the royalties collected by the Beury heirs under the contract of July 25, 1918, be paid by the Beury heirs to plaintiffs. The Beury

heirs reside in West Virginia, and an attachment was prayed for against their property in Virginia.

The Beury heirs claim in their answer that by the deed of January 21, 1901, all the limestone on the land was reserved by J. L. Beury and that the title thereto is vested in his heirs, who they claim are entitled to collect the royalties on the limestone removed by the Virginian Limestone Corporation under the agreement of July 25, 1918. These defendants also pray that the court will enter a declaratory judgment, adjudicating and establishing the "right, title and ownership of the said defendants to all the metals and minerals of every kind and description whatsoever in and under the land described in the deed from the said J. L. Beury to said H. B. Shelton and H. L. Phlegar."

The joint and several answer of C. A. Klotz and the Virginian Limestone Corporation alleges that between July 25, 1918, and September 30, 1925, the Virginian Limestone Corporation has paid to the successors in title of J. L. Beury, deceased, $16,832.20, but has made no payment since September 30, 1925. The answer further alleges that future payments of royalties cannot be determined until the court decides to whom the limestone belongs.

Upon a hearing on the petition and answers, the attachment and the evidence adduced by the parties, the court entered a decree on March 21, 1928, adjudging, among other things, that the limestone on, in and underlying the tract of land conveyed by J. L. Beury and wife to H. B. Shelton and H. L. Phlegar, by the deed of January 21, 1901, "was not included in any mineral reservation contained in said deed, and that all the limestone on, in and upon said land passed by the said deed to said Shelton and Phlegar, the grantees.

therein, and was thereby vested in them in fee simple;"
that H. B. Shelton and H. L. Phlegar are not entitled
to recover anything from the heirs at law of J. L.
Beury, deceased, on account of any royalty payments
made to them by Virginian Limestone Corporation, for
limestone quarried and taken from the land mentioned
in the petition; that by virtue of the deed from H. B.
Shelton and wife to H. L. Phlegar, dated May 4, 1918,
and the deed from H. L. Phlegar and wife to Chas. A.
Klotz, dated May 4, 1921, the fee simple title to all
the limestone on, in and underlying all that part of
the tract of 117 acres of land conveyed by H. L. Phlegar
and wife to Chas. A. Klotz by last mentioned deed,
which is included within the exterior bounds of the
tract of land conveyed by J. L. Beury and wife to
Shelton and Phlegar, became vested in Chas. A.
Klotz; that the attachment against the property of
the heirs at law of J. L. Beury, deceased, be dismissed
and the levy of the attachment be discharged; and
that the cause be continued on the docket as a pro-
ceeding under the provisions of section 6140-a of the
Code of Virginia, with leave to the parties to amend
their pleadings, if they shall be so advised, and to seek
further relief.

This is an appeal from that decree.

A careful consideration of the pleadings, evidence and
briefs of counsel leads us to the conclusion that there
is no error in the decree complained of. The memo-
randum opinion of the Honorable A. C. Buchanan,
the able judge who decided the case in the lower court,
is so completely in accord with the views of the mem-
bers of this court that we have adopted his opinion,
copied herein, as the opinion of this court in the case,
as follows:

"I. The first point for decision in the case is, naturally, whether by the deed of January 21, 1901, from Joseph L. Beury and wife to Shelton and Phlegar, the limestone was reserved to Beury, or passed to Shelton and Phlegar.

"The exception is of all the metals and minerals of every kind and character whatsoever in and underlying the entire body of said two tracts of land; and there is further excepted along with these metals and minerals, the rights, to enter upon said land and to excavate therein and thereon for such metals and minerals; to mine, dig and remove such metals and minerals; to enter for the purpose of mining, digging and removing any and all metals and minerals therein and thereon; said mining, digging and removing the metals and minerals to be done with as little injury to the growing crops as conveniently and reasonably may be.

"There is further reserved to the grantor the right to enter upon and possess, whenever necessary and proper 'for the enjoyment of the mineral right and privileges heretofore and herein reserved,' a small piece of the land on which to construct any and all kinds of machinery necessary 'in the use and enjoyment of said mineral privileges,' and to erect houses for tenants, etc.

"With the exceptions, however, that the grantees, their heirs and assigns, shall have the right to use and occupy said piece of land at all times when the same shall not be used by the grantor, his representatives or assigns, in carrying on and performing their business 'in mining and removing the metals and the minerals hereinbefore reserved.'

"Evidence was taken in an attempt to show what was intended by the reservations; that is, what the

parties had in mind as viewed from their situation, the situation of the property, and the circumstances surrounding the transaction. All such evidence was objected to by counsel for the Beurys on the ground that the language of the reservation is not ambiguous, and that, therefore, under familiar principles, parol evidence is not admissible. In other words, they contend that the reservation, coupled with the language employed in describing the rights reserved therewith, clearly shows that limestone was included therein, and therefore extrinsic evidence cannot be permitted to narrow or restrict the natural import of the words. There is no question that this is a fundamental rule of evidence, but before it may be applied in must appear that an ambiguity does not exist. But the necessity of resorting to the description of the rights reserved along with the substance reserved is in itself some indication that what is included in the substance reserved is not clear.

"There is doubt that limestone is a mineral in the scientific or geological sense, which classifies all matter as animal, vegetable or mineral. But it is rare, if ever, that mineral is intended in this sense in the ordinary trading transaction about which deeds and contracts are made. It must, therefore, be acknowledged that the term is ordinarily used to denote a class of things less comprehensive than the scientific definition, and that just what it does include voices in different instances, depending upon various things, and an examination of the numerous cases quickly shows that there is no practical guiding rule for use in all cases, but that what the term includes differs as the facts of each case differ, and what the courts attempt to do is to ascertain what the parties intended, determining this from the language employed in the instru-

ment, if that may be done with certainty, and if doubtful, then to call to their aid the facts and circumstances surrounding the transaction, so the court may view it from the situation of the parties when the instrument was executed.

"An illustration of this is found in the case of *White* v. *Sayers*, 101 Va. 828, 45 S. E. 749, where the court held that under the circumstances of that case coal was not included in the term 'minerals' as used in the instrument there construed, and the court said: 'It was well said by Gibson, C. J., *Schuylkill Nav. Co.* v. *Moore*, 2 Whart. [Pa.] 477: "The best construction is that which is made by viewing the subject to the contract as the mass of mankind would view it; for it may be safely assumed that such was the aspect in which the parties themselves viewed it." ' And that in arriving at the intention of the parties, ' "regard is to be had to the situation of the parties, the subject matter of the agreement, the object which the parties had in view at the time and intended to accomplish. A construction should be avoided, if it can be done consistently with the tenor of the agreement, which would be unreasonable or unequal, and that construction which is most obviously just is to be favored as most in accordance with the presumed intention of the parties." '

"In *Rock House Fork Land Co.* v. *Raleigh Brick & Tile Co.*, 83 W. Va. 20, 97 S. E. 684, 17 A. L. R. 144, the conveyance was of 'all the coal and other minerals of every kind and description, except gas and oil, in and underlying said lands,' and the court held that this language did not embrace a seam of brick clay, saying in the first point of the syllabus: 'The term ' "mineral" ' is not a definite one, capable of a definition of universal application, but is susceptible of limitation according to the intention of the parties using it, and in deter-

mining its meaning regard must be had not only to the language of the deed in which it occurs, but also to the relative position of the parties interested, and to the substance of the transaction which the deed embodies.'

"The court held that where it could not be determined by the words used to describe the substance reserved, then the intention of the parties as to the extent of the minerals granted may be determined from the language of the mining rights incident thereto, and 'such grant limited to such minerals as are ordinarily produced by the exercise of such mining rights as are granted by the deed.'

"In *Sult* v. *Hochstetter Oil Co.*, 63 W. Va. 317, 61 S. E. 307, the court quotes from MacSwinney on Mines, to the effect that *prima facie* the word mineral will include every substance which can be got from underneath the surface of the earth for the purpose of profit, but that 'in all cases the *prima facie* meaning of the word will yield to the intention of the parties when, from the language of the instrument in question, such intention is made reasonably clear or the particular circumstances under which an instrument of severance takes place, shows an intention to restrict its meaning, and, in doubtful cases, its meaning will be restricted to that given it by the custom of the country in which the contract is to operate.'

"In *Armstrong* v. *Lake Champlain Granite Co.*, 147 N. Y. 495, 42 N. E. 186, 49 Am. St. Rep. 683, it is said: 'It is plain that the owner of land who grants the minerals to another does not use the word as synonymous with mineral substances, because if this meaning was attached to the grant, it would amount to a grant of the whole land, as the soil and all below it would be embraced in that description.' Speaking of some English cases where the right of open quarrying

was held to accompany a grant or reservation of mines and minerals, the court said that in every case brought to its notice, the right to open quarrying has been sustained upon special language, and quoted from one of the English cases that 'in such agreements, in the absence of a definite indication of a contrary intention, it is always to be assumed that the reserved minerals are only to be worked in such manner as is consistent with the surface remaining undisturbed.'

"The following is quoted from *Brady* v. *Smith*, 181 N. Y. 178, 73 N. E. 963, 106 Am. St. Rep. 531, 2 Ann. Cas. 636: 'In *Countess of Listowel* v. *Gibbings*, 9 Ir. C. L. Rep. 223, under reservation of "all mines and minerals," it was held that limestone was not included in the reservation. The learned judge writing in that case said: 'I do not deny that, if it clearly appeared to be the intention of the parties to be collected from the instrument, that limestone quarries should pass by the words "mines and minerals" they might pass; but words are to be understood in their natural and usual meaning, unless there be a clear indication that they are in a particular case intended to have a more or less extended signification. Usually "mines" imports a cavern or subterraneous place, containing metals or minerals, and not a quarry; and mineral means ordinarily metallic fossil bodies, and not limestone.'

" 'It is thus apparent that each case must be decided upon the language of the grant or reservation, the surrounding circumstances and the intention of the grantor, if it can be ascertained.'

"*White* v. *Miller*, 200 N. Y. 29, 92 N. E. 1065, 140 Am. St. Rep. 618, is another case to the effect that limestone is not included in a reservation of minerals and holding that an exception of 'mines and minerals' includes all inorganic substances which can be taken

from the land in the absence of other words restricting the meaning of the term, so that the exception would include gypsum, which underlay the limestone formation at a depth of from twenty-five to forty feet, but in places rose to within a foot or eighteen inches of the surface, but would not include the surface limestone.

\* \* \* \* . \* . \* \* \*

██ "It is a well known fact, and known of course to the parties to the deed here involved, that the section where this deed was to operate was a limestone country, where the land is everywhere underlain with limestone, and where it crops out on practically every tract of land that is not bottom land, and where it makes its appearance in manner varying from hugh cliffs, as in the case here, to small outcroppings on various parts of the land. It is on the land everywhere either breaking through it, or lying under it at different depths. In this country it is a part of the soil, and a conveyance that reserves the limestone with the right to remove it would reserve practically everything and grant nothing. The only way it is removed, or can be removed, is by quarrying, which requires the taking off of any top soil that may lie above it and blast it off. There is nothing left when the limestone is taken.

"It is a familiar rule of construction that the language of a grant is to be taken most strictly against the grantor; and further, as said in *Sult* v. *Hochstetter Oil Co.*, *supra*, in doubtful cases, the meaning of the word 'minerals' will be restricted to that given it by the custom of the country in which the contract is to operate. In this limestone country, where a grant of land is made, and the minerals and right to remove them are reserved, the language ought to be clear and specific to justify a construction that would allow the

reservation to take back or destroy the thing that is granted. A fair construction of the language of the reservation in the deed here involved, with such explanation as is given thereto by the rights reserved therewith, reached in the light of the conditions surrounding the thing dealt with, does not, in my judgment, include limestone in the reservation. It seems to me that the words describing the substance reserved and the words describing the removal rights are only such as are apt and proper to describe 'such minerals as are secured by the ordinary processes of mining.' Limestone is obtained by quarrying. In ordinary usage, in this section, neither the layman nor the lawyer would think of limestone when metals and minerals are referred to. If it had been intended to reserve limestone, it seems rather clear that it would have been done explicitly in an instrument which bears every evidence of careful and skilled preparation, and among the rights reserved with it would have been the right to quarry it, and provision would have been made, both for the protection of the grantor and the grantees, for taking care of improvements on the land which would necessarily be destroyed when the stone was recovered. Instead of this, we find the instrument provides that the 'mining, digging and removing' of the minerals and metals 'shall be done with as little injury to the growing crops as conveniently and reasonably may be.' And further, there is a reservation of a small piece of the surface, which the grantor reserves the right to enter upon and possess whenever necessary and proper for the enjoyment of the mineral rights and privileges reserved, with the further provision that the grantees shall have the right to use and occupy this piece of land when it is not in use by the grantor 'in mining and removing the metals and minerals herein

reserved.' It is not probable that if it had been intended to reserve the limestone, care would have been taken to define the rights of the parties on this small piece of the surface, when the right to take the limestone would have given the grantor the control of all the surface, calling for a more specific provision as to the rights of the grantees in the use thereof. It is the view of the court that the proper construction of the deed itself is that the limestone is not included in the reservation of the metals and minerals made therein.

"It is not necessary here to review the oral evidence in the case. It has been carefully read, and the effect of it is, in my opinion, to confirm the conclusion above stated.

"There has been handed to the court a copy. of the petition for appeal in the suit of *Allie L. Brent* v. *John A. Johnson, et als.*, in the Circuit Court of Lee county, 1926, which involved the construction of a deed made September 26, 1906, from Brent to Johnson, conveying a tract of land with this reservation: 'The said Allie B. Brent reserved one-half of the mineral in this land.' There was no reservation of any removal rights, or anything further on the subject than the language quoted. In its decree the court held: 'It is the opinion of the court that the reservation of one-half the minerals mentioned in the deed from Allie L. Brent and W. G. Colson to John A. Johnson, bearing date on the 26th day of September, 1905, and which is filed as an exhibit in this case, marked "Exhibit A," does not include the limestone in, on and under the said lands included in said deed, and that the whole of said limestone in, on and under said lands passed by the said deed to the said vendee, John A. Johnson.'

"It appears that evidence was taken in the case, but just what this evidence was does not, of course, fully

appear from the position; but it does appear that the grantor testified that when the deed was executed the question of what would be reserved was discussed, and that iron ore was mentioned, and 'Mr. Colson spoke of not knowing what was in the land, what mineral was in land, and said, we will say "mineral" in the reserve. I felt very well satisfied that all would come under "mineral" was reserved, whatever that was, was all right,' and that this was not 'directly and emphatically' denied.

"In the petition it was urged that limestone was a mineral, and that the trial court erred in limiting the meaning of the word mineral in the deed so as not to include limestone, and many of the cases are cited which are cited by counsel in this case. The Supreme Court refused the appeal, the petition indicating that it was presented to and refused by each member of the court.

"II. *As to Estoppel and Laches.*—On July 25, 1918, the successors in title of Joseph L. Beury leased the limestone on this land to the Virginian Limestone Corporation, and this company has quarried the limestone ever since and paid the royalty of three cents per cubic yard to the Beurys. It is claimed that the plaintiffs recognized and acquiesced in the claim of the Beurys from the date of their deed from Joseph L. Beury down to 1925, when this suit was brought, and are therefore estopped now to deny the Beury title. In 1916 Phlegar and Shelton themselves made a lease to Charles A. Klotz at a royalty of one cent per cubic yard for the limestone on two parcels of land, parcel No. 1, containing 582 acres, and the description of which includes the 400-acre tract conveyed by the deed from Beury to Phlegar and Shelton. The right given by this lease is to quarry and remove the lime-

stone 'from any or all that part of their said land which is bounded and described as follows.' No reference is made in this instrument to the interest owned by the Beurys, unless it be true, as claimed by counsel for the Beurys, that the language quoted is itself a recognition thereof; and the lease is made with covenants of right to lease, freedom from incumberances and further assurances. The evidence shows that when this lease was made it was contemplated that operations thereunder should be on the land outside the Beury land, but it was learned that the limestone where it was so expected to operate was of poor quality. The question then arose as to taking the limestone from the Beury land, and Williams and Farrier, of Pearisburg, attorneys, made an examination of the title and advised Phlegar and Shelton that the reservation in the Beury deed was broad enough to cover limestone, and that the Beurys, and not Phlegar and Shelton, owned this limestone. Phlegar and Shelton then undertook to get a deed from the Beurys for this limestone, but were not successful, and thereafter the lease was made by the Beurys to the Virginian Limestone Corporation.

"The question involved here is a question of title. The conduct of the plaintiffs would not have the effect to divest them of a title actually owned. If the title actually passed to them by the Beury deed, then their thinking or acting as if it did not would not change the effect of the deed. The bearing their conduct would have would be on the question of the construction of the deed, if necessary to resort to extrinsic evidence to construe it. Their explanation is that after being advised by said attorneys that they did not own this limestone, they did not think there was anything further to be done by them about it, although they do testify that they were not satisfied with the advice,

and did not think the limestone was reserved, and they did nothing further until in 1925, when another attorney was making an examination of the Beury deed and advised them that the limestone was not reserved and they then brought this suit.

■ "Their reliance upon the advice of reputable attorneys seems to be sufficient explanation of their failure to act. It should not be the policy of the law to encourage litigation by requiring parties to test out by suit the opinion of attorneys to whom they go for advice. See in this connection *Dinwiddie* v. *Self*, 145 Ill. 290, 33 N. E. 892.

"My conclusion is that there has not been such laches or estoppel as bars the plaintiffs from now asserting their title.

■ ■ "III. *Effect of above Conclusions on Rights of Parties in this Suit.*—The plaintiffs brought this suit, which is an attachment suit, on the theory that they owned the limestone, and that it was being removed by the Virginian Limestone Corporation, which had paid the Beurys therefor at the rate of three cent per cubic yard, and therefore the Beurys owed them $9,000.00 for two reasons: (1) For royalties paid by the Limestone Corporation to the Beurys from 1918 to May 4, 1921; or (2) $9,000.00 damages for trespass in causing the removal of the plaintiffs' property.

"On May 4, 1918, Shelton conveyed his interest in this Beury land to Phlegar by deed which provided 'that the said H. B. Shelton and H. B. Phlegar retain jointly, and that they shall hereafter, as heretofore, share equally in all rights, benefits, privileges, rent, royalties and incomes to accrue from the existing contracts between them and Charles A. Klotz, in connection with the limestone works on said lands, now being

operated by the Virginian Limestone Corporation, until the termination of said lease contracts.'

"On May 4, 1921, Phlegar conveyed 117 acres of this Beury land to Klotz for $20,000.00. The evidence indicated that this 117 acres includes all the area from which limestone has been taken. This deed is made subject to the 'exceptions and reservations of the minerals and mining rights and privileges,' contained in the Beury deed. The deed further provides that so far as Phlegar is concerned, the provision of the contract of February 12, 1916, for the payment by Klotz of $100.00 per acre for the land destroyed in quarrying, and $175.00 per annum for the bottom land, shall be inoperative so far as the 117 acres is concerned. Presumably Shelton still owns a right to one-half of this $100.00 per acre and this rent.

"This deed also provides: (1) That the grantee shall continue to pay the royalty provided for in the said contract of February 12, 1916, for 'any and all stone that they may hereafter quarry from any of the land hereinabove conveyed, excepting, of course, any part thereof in which the heirs of J. L. Beury own the minerals;' (2) that nothing in this deed shall abridge the rights of the lessee to quarry stone from the rest of the land in the said contract of February 12, 1916, leased for quarry purposes, nor impair the obligation of the lessee to pay the royalties therein provided for, 'it being understood that said minimum royalty payments shall be made so long as the limestone plant at Klotz shall be operated under said contract of February 12, 1916, or under any renewal or renewals or extensions thereof as therein provided for;' and (3) that the deed is made subject to the rights of Shelton under the contract of February 12, 1916.

"It is alleged in the petition that at the time this deed was made the contract of February 12, 1916, had expired, because neither Klotz nor the Virginian Limestone Corporation 'had taken advantage of the option set forth in said lease as to the extension thereof,' and that after this conveyance, Klotz and the Virginian Limestone Corporation, claiming under him, 'became the owners and are now the owners of all the limestone which underlay the said 117 acres of land.'

"The allegation that at May 4, 1921, the lease contract of February 12, 1916, had expired is not supported by any evidence and is contrary to the provisions of the lease, which provided that the original term should be for eight years; and is further contrary to the recitals and provisions of the said deed of May 4, 1921.

"As stated, the period covered by the plaintiff's claim to $9,000.00 is from July 25, 1918, to May 4, 1921, when conveyance was made to Klotz. The court cannot see how the plaintiffs are entitled to $9,000.00 or any other sum from the Beurys in this case.

"In the first place, there is nothing in the record by which it may be ascertained how much the Beurys received for royalties for this period. The answer of Klotz and the Virginian Limestone Corporation states that from July 25, 1918, to September 30, 1925, the Beurys were paid $16,832.30. How much of this was for the period of May 4, 1921, is not stated, and the evidence is silent on this subject.

"Since the plaintiffs are claiming for payments made prior to May 4, 1921, and this suit was brought in 1925, no reason is apparent why their claim is not barred by limitation, if it were otherwise enforceable against the Beurys. The last sentence of section 5811 of the Code, added by the 1919 revision, provides: 'The right to recover money paid under fraud or mis-

take shall be deemed to accrue, both at law and in equity, at the time such fraud or mistake is discovered, or by the exercise of due diligence ought to have been discovered.' This section might apply if this suit had been brought by the limestone corporation to recover the money paid by it to the Beurys, depending on the circumstances, as hereinafter shown. But Phlegar and Shelton have not paid the Beurys any money. Neither has the limestone corporation paid them money that Phlegar and Shelton were entitled to receive. The money received by the Beurys was paid them by the limestone corporation under the contract of July 25, 1918. The amount paid by the limestone corporation to the Beurys is not a matter of concern to the plaintiffs, because the plaintiffs, prior to 1918, had entered into a contract with the limestone corporation's predecessor in title, granting the right to remove this same limestone at a royalty of one cent per cubic yard. Such money as is due the plaintiffs is due them from the Virginian Limestone Corporation, either under the aforesaid contract, or on some other proper basis, which cannot be determined in this suit.

"Neither can the plaintiffs recover from the Beurys on the theory that they were guilty of a 'wrong and trespass' against the plaintiffs 'in authorizing the Virginian Limestone Corporation to enter upon said lands and remove the limestone therefrom. The stone removed prior to 1921 was removed while the contract of February 12, 1916, was in effect, and by it the plaintiffs themselves authorized the Virginian Limestone Corporation, or its predecessor, to remove the stone.

"The contract of the Beurys with the limestone corporation granted to the limestone corporation such rights to quarry and remove the limestone 'as are vested in the party of the first part by virtue of the

reservation and exception contained in the said deed from Joseph L. Beury and Julia A. Beury, his wife, to H. B. Shelton and H. L. Phlegar.' 'It being the intention of the parties hereto that the parties of the first part shall grant hereby to the party of the second part only such rights, and in no event in excess of the rights herein expressly set out, as are vested in the said parties of the first part to quarry and remove the limestone in and underlying the lands herein described.'

"If the contract of February 12, 1916, was in force when the limestone was removed, then the removal of it was no treapass against the plaintiffs; if it was not in force, then it would seem that such trespass against the rights of the plaintiffs as has been committed was done by the Virginian Limestone Corporation.

"The result of these conclusions is that the plaintiffs are not entitled to recover from the Beurys in this suit. The writ of attachment sued out and levied therein should, therefore, be dismissed, but in accordance with the provisions of chapter 254a of the Code, the court holds that the effect of the deed of January 21, 1901, from Beury to Phlegar and Shelton passed the title to the limestone in said land to Phlegar and Shelton, and the decree to be entered herein shall so adjudicate.

"As to the rights existing between the plaintiffs and the Virginia Limestone Corporation, the court does not adjudicate. No definite issue has been presented between them, and the aid of the court may not be desired in the settlement of matters between them; or, if desired, then such settlement may depend on various considerations which are not at this time developed.

"Neither may the court now adjudicate the rights between the Beurys and the limestone corporation.

Whether the latter may recover from the Beurys, for part payments, or whether further payments shall be made may depend upon such questions as the proper application of the statute of limitations, the proper construction of the contract of 1918, and other matters upon which these parties are now at issue, and in which the plaintiffs in this suit are not concerned.

"Upon all these matters the court now expresses no opinion, but leaves these parties further to prosecute such claim, either in this proceeding, under the provisions of chapter 254 a of the Code, or in new proceedings, as and if they may be so advised."

The case will be remanded for such further proceedings as may be necessary.

*Affirmed and remanded.*