██ CHAMPLAIN GAS & OIL, LLC, et al., Respondents, v THE PEOPLE OF THE STATE OF NEW YORK, Acting by and Through the Commissioner of Environmental Conservation, Defendant, and LYME ADIRONDACK TIMBERLANDS I, LLC, Appellant. [49 NYS3d 563]—

McCarthy, J.P. Appeal from that part of an order of the Supreme Court (Ellis, J.), entered June 9, 2015 in Clinton County, which partially granted plaintiffs' motion for summary judgment and denied summary judgment to defendant Lyme Adirondack Timberlands I, LLC.

In 2013, plaintiffs initiated a declaratory judgment action based on allegations that included that they were the owners of certain mineral estates to certain land located in Clinton County otherwise owned by defendant Lyme Adirondack Timberlands I, LLC (hereinafter Lyme). In 2007, Lyme had granted a conservation easement to defendant People of the State of New York, by and through the Commissioner of Environmental Conservation (hereinafter the State), which, among other things, prohibited mining on approximately 13,700 acres of property. According to plaintiffs' allegations, plaintiffs owned certain mineral rights on property that included particular property otherwise owned by Lyme that was subject to the conservation easement and other property that Lyme owned not subject to the easement. To the degree that plaintiffs referenced the location and boundaries of the mineral rights at issue, they did so by general reference to specified lots that were depicted in a set of attached maps (hereinafter the compiled maps). The compiled maps, which were created in 2007, solely depict surface rights, were not created in relationship to this action and did not specifically refer-

ence plaintiffs as the owners of any property rights in the lands depicted.

In June 2014, plaintiffs moved for summary judgment seeking a declaration that (1) Lyme's conservation easement to the State was invalid to the extent that it affected certain mineral rights held by plaintiffs, and (2) plaintiffs hold title to certain mineral rights upon other property owned by Lyme not subject to the conservation easement. Thereafter, Supreme Court converted the declaratory judgment action to one to quiet title pursuant to RPAPL 1501 and partially granted plaintiffs' motion for summary judgment. In its order, the court offered no specific explanation of the location and boundaries of plaintiffs' mineral rights or Lyme's surface rights, but nonetheless declared that the ownership interest of Lyme to property in lots "12, 14, 19, 20, 21, 22, 28, 29, 37, 39, 46, 47, 48, 49, 57, 64, 65, 66, 74, and 75 is subject to plaintiffs' mineral rights estates."[1] The court also found that the rights and interests of the State in the conservation easement in the aforementioned lots were also subject to plaintiffs' mineral rights estate and, further, that plaintiffs' mineral rights estate included the rights to extract and remove sand and gravel. Lyme now appeals, and we reverse so much of the order as granted summary judgment against Lyme.

Initially, Supreme Court correctly determined as a matter of law that those mineral rights that plaintiffs owned and that were originally derived from a 1917 deed from a grantor, who was the common grantor of plaintiffs' mineral rights and at least certain of Lyme's surface rights, included the right to extract and remove sand and gravel.[2] The Court of Appeals has directly passed on the meaning of the term "minerals" as used in a conveyance and concluded that the term "will include all inorganic substances . . . [that] can be taken from the land" where the term's meaning is not restricted "b[y] qualifying words, or language, evidencing that the parties contemplated something less general than all substances legally cognizable as minerals" (*White v Miller*, 200 NY 29, 39 [1910]). Thus, unless qualifying and restrictive language related to the term

---

**1.** As plaintiffs concede in their brief, Supreme Court "never reached the issue of the precise location of [plaintiffs' mineral estate] boundaries." They further contend that Supreme Court did not need to reach the issue because "the precise location of the boundaries of that estate were not material to the resolution of the case."

**2.** Lyme does not specifically contest the general finding that plaintiffs own whatever mineral rights were transferred by the 1917 deed or that those mineral rights pertain to some portion of property for which Lyme owns surface rights.

minerals renders the term ambiguous in any particular conveyance, the meaning of minerals is determinable as a matter of law and is not subject to extrinsic proof (*see Loch Sheldrake Assoc. v Evans*, 306 NY 297, 305 [1954]; *Eliopoulous v Lake George Land Conservancy, Inc.*, 50 AD3d 1231, 1232 [2008]). The 1917 deed conveyed a minerals estate that included "all . . . minerals in, under and upon" the specified properties together with the right to "dig, mine and remove" those minerals from the land free from any liability for damage. Accordingly, given that the language in the 1917 deed does not qualify or restrict the term minerals, the Court of Appeals' interpretation controls. Therefore, as sand and gravel are "inorganic substances . . . [that] can be taken from the land," they fall within the mineral rights conveyed by the 1917 deed (*White v Miller*, 200 NY at 39).

Nonetheless, Supreme Court erred in partially granting plaintiffs' motion for summary judgment against Lyme, as plaintiffs failed to submit proof establishing that there were no material issues of fact regarding the location and boundaries of their mineral rights that derived from the 1917 deed. "[T]he proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *accord Pullman v Silverman*, 28 NY3d 1060, 1062 [2016]). Summary judgment is a drastic remedy and, therefore, "facts must be viewed in the light most favorable to the non-moving party" (*Vega v Restani Constr. Corp.*, 18 NY3d 499, 503 [2012] [internal quotation marks and citation omitted]).

In their complaint seeking a declaratory judgment, plaintiffs offered no meaningful description of the boundaries of their mineral rights. Moreover, in moving for summary judgment, plaintiffs did not submit a survey created for the purpose of depicting the boundaries of their mineral rights in relation to any of Lyme's surface rights. Instead, plaintiffs contended that they had adequately described the boundaries of their mineral rights by way of reference to the compiled maps and a survey from 1979 that showed "where all of the different lots are." Plaintiffs further contended that the lot boundaries were a sufficient reference for granting plaintiffs summary judgment because they "show[ed] [plaintiffs'] boundaries . . . because they're exactly the same." However, plaintiffs' submissions in support of their motion did not uniformly support the proposition that the lot boundaries "exactly" depicted the boundaries

of plaintiffs' mineral rights[3] or that, more generally, where the compiled maps indicated that Lyme owned surface rights, plaintiffs owned the underlying mineral rights at issue. In support of their motion, plaintiffs submitted the affidavit of Thomas Magee, the vice-president of a full service title company. As to plaintiffs' mineral rights, Magee concluded that the sources that he considered "support . . . [p]laintiffs' claims for mineral rights for many, *but not all*, of the . . . lots identified in [the compiled maps]" (emphasis added). In addition, Magee did not offer a specific and coherent opinion as to the location of the boundaries of the mineral estate that he claimed plaintiffs owned. In sum, plaintiffs did not submit a survey specifically depicting the location and boundaries of their alleged mineral estate nor an expert affidavit that described such locations and boundaries.

Moreover, plaintiffs' submissions in support of their motion raised further doubts as to the accuracy of the compiled maps' depiction of surface rights and lot boundaries as meaningful references for locating plaintiffs' mineral rights. For example, Magee identified a 1933 referee's deed as part of plaintiffs' chain of title to the mineral rights at issue. In that 1933 referee's deed, the description of the boundaries of the mineral estate in regard to multiple specified lots is not coterminous with the lot boundaries.[4]

In addition, it is equally clear that the description of the boundaries of the mineral rights in the 1933 referee's deed is not coterminous with the boundaries of Lyme's surface estate as identified on the compiled maps, upon which plaintiffs relied in the absence of conducting its own survey. Considering the foregoing, plaintiffs failed to make a prima facie showing of the location and boundaries of their mineral estate (*see Rautenstrauch v Bakhru*, 93 AD3d 836, 836 [2012]; *Gholizadeh v Keifer*, 66 AD3d 1209, 1211 [2009]; *O'Brien v Town of Huntington*, 66 AD3d 160, 166 [2009], *lv denied* 21 NY3d 860 [2013];

---

**3.** Plaintiffs do not argue on this appeal that their chain of title uniformly establishes that the boundaries of their mineral estate are coterminous with the lot boundaries. Instead, they argue that Supreme Court only granted them mineral rights as limited by their chain of title.

**4.** The disparities are not de minimus or immaterial ones such that plaintiffs nonetheless made a prima facie showing of the location and boundaries of their mineral rights to a "common certainty" (RPAPL 1515 [2]; *see generally Mandel v Estate of Frank L. Tiffany*, 263 AD2d 827, 828 [1999]). As one example, the 1993 referee's deed specifies that the mineral rights in lot 12 are "[m]inerals in [the] whole lot except in [a] 35 acre parcel thereof." The deed contains no further description as to the location of the excepted 35 acres to which plaintiffs' own no mineral rights, and such exception is not depicted on the compiled maps.

City of Binghamton v T & K Communications Sys., 290 AD2d 797, 799 [2002], lv dismissed 98 NY2d 685 [2002]; Patterson v Palmieri, 284 AD2d 852, 853 [2001]; Kahil v Townsend, 5 AD2d 940, 940 [1958] [finding that, from the deed at issue, the location and boundaries of a property were "virtually impossible" to locate without "an accurate survey and a professional interpretation thereof"]). Plaintiffs' remaining arguments for affirming the court's grant of partial summary judgment are without merit.

Egan Jr., Lynch, Clark and Mulvey, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as partially granted plaintiffs' motion for summary judgment against defendant Lyme Adirondack Timberlands I, LLC; motion denied to that extent; and, as so modified, affirmed.