ANNA BRADY, Appellant, *v.* LOUISE J. SMITH, Respondent, Impleaded with Others.

DEED — WHEN RESERVATION OF "ALL MINES AND MINERALS" DOES NOT INCLUDE LIMESTONE. An exception and reservation to the grantor and his heirs, in a deed of land largely covered with limestone or granite ledges rising above the natural surface, of "all mines and minerals which may be found on the above piece of land, with the right of entering at any time with workmen and others to dig and carry the same away," refers to minerals in mines found, with the right to enter and "dig," a word, as used in the text, not applicable to open quarrying and blasting: and the ownership of the limestone with the right to conduct open quarrying for the purpose of taking possession thereof does not remain in the grantor but passes to the grantee.

*Brady* v. *Smith*, 88 App. Div. 427, reversed.

(Argued March 10, 1905; decided April 11, 1905.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered December 2, 1903, which affirmed a judgment entered upon a decision of the court at a Trial Term without a jury, determining the interests of the parties herein to certain lands and to certain limestone beds located thereon.

The facts, so far as material, are stated in the opinion.

*Charles S. Mereness* for appellant. John La Farge did not reserve the limestone or granite bed on the twenty and four one-hundredths acres of land, in his deed to Margaret Lewis, in February, 1852. (*Harris* v. *Oakley*, 130 N. Y. 1; *Blackman* v. *Striker*, 142 N. Y. 455; *Thayer* v. *Finton*, 108 N. Y.

394; *Grafton* v. *Moir*, 130 N. Y. 465; *Armstrong* v. *Granite Co.*, 147 N. Y. 495; *Dunham* v. *Kirkpatrick*, 101 Penn. St. 43; *Listowell* v. *Gibbings*, 9 Ir. C. L. 223; *Provost* v. *Fairie*, L. R. [13 App. Cas.] 675; *Brown* v. *Chadwick*, 7 Ir. C. L. 101; *Darwill* v. *Roper*, 3 Drury, 294.) Mines, according to the ordinary definition of the term, as well also as the legal application, signify a way or passage under ground, a subterranean duct, course or passage, whether in search of metals, or to destroy fortifications, and the word minerals, being derived from mine, signifies that which is obtained from underground workings, and not that which is dug from quarries, which are wrought from the surface. (*Stevens* v. *Gill*, 1 Mining Rep. 576; *Stevens* v. *Williams*, 1 Mining Rep. 557; *I. S. M. Co.* v. *Cheeseman*, 2 McCrary, 191; *N. P. Ry. Co.* v. *Soderberg*, 188 U. S. 525.)

*A. E. Kilby* for respondent. In the case at bar, " minerals " are in the exception clause of the deed, and hence did not pass to the grantee. And as limestone and granite are minerals they did not pass, unless the wording of the grant can be impeached by a supposed intent of the parties. (*Harris* v. *Oakley*, 130 N. Y. 1; *Armstrong* v. *Granite Co.*, 147 N. Y. 495; *Hext* v. *Gill*, 3 Eng. Rep. 574.)

BARTLETT, J. This action, in form, is a partition suit, but by consent was tried for the purpose of settling the rights of all the parties claiming a title or interest in the land or the limestone bed located thereon and the right to work the bed by open quarrying. This action was tried by Justice WILLIAM S. ANDREWS, who wrote an opinion which was adopted by the Appellate Division. The long and complicated chain of title involved in this case is set forth in the opinion of the learned trial judge, and need not be stated here in detail.

On or about February 18th, 1852, one John La Farge, who was the owner of a hundred acres of land in Diana, Lewis county, conveyed the same by warranty deed to Margaret Lewis, with the following reservation: " Excepting and reserv-

ing therefrom unto the parties of the first part, their heirs and assigns forever, all mines and minerals which may be found on the above piece of land, with the right of entering at any time with workmen and others to dig and carry the same away."

The will of John La Farge was admitted to probate in 1858, and by it he gave and devised to his wife, who has since died, during the term of her natural life, a one-third part of his real estate, and bequeathed all the rest and residue of his property to his children. By a deed recorded August 6th, 1898, certain of the descendants of La Farge, who obtained title under this will, conveyed to the defendant Louise J. Smith their right, title and interest in an undivided four-thirty-fifths share of the mineral rights upon twenty acres of said premises; and she in turn later made an agreement with the defendant John J. Sullivan, permitting the latter to enter upon the property and dig for and carry away the minerals found thereon.

The trial judge states in his opinion as follows: "The twenty acres in question are largely covered with limestone or granite ledges rising above the natural surface of the ground. There is, it is true, some timber and some tillable land, but probably the chief value of the property consists in this stone. To obtain this material a quarry has been opened.

"The plaintiff claims that she and her sisters, subject to their mother's right of dower, are the owners of this limestone or granite bed, and that she and her mother each own an undivided half of the remainder of the premises, and that she is entitled to a decree of partition in this action. She also states that the other defendants claim some interest in the property, and she now asks to have the rights of all the parties fixed and determined. With this end in view, and upon the consent of all the parties, an order was made bringing in certain defendants not originally sued.

"The defendants Sullivan and Smith in their answer claim that the rights to the granite or limestone quarry were reserved in the deed from La Farge to Lewis; that Smith is a tenant

in common with the heirs of La Farge not parties to this
action, and that, as such tenant in common, she had a right to
give to Sullivan the authority to remove the material.

"Rebecca Phelps claims that under the infancy proceedings
and the contract she is the equitable owner and is entitled to
receive a conveyance of the entire property, subject to the
Phelps and Carpenter lease, upon paying the balance of the
purchase price.

"The defendants Carpenter and Phelps, the Oswegatchie
Quarry Company and the Metropolitan Marble Company
claim that under the lease made by Mary Brady they are
rightfully entitled to possession of the land and the quarry
for a period of fifty years from the date of the lease. As a
matter of fact the defendant Sullivan seems to be in actual
possession of the quarry."

The trial judge thereupon states at length certain conclusions
which he had reached by reason of the facts as stated. Among
other conclusions the trial court held and the judgment
appealed from adjudges, that the defendant Louise J. Smith
is the owner of four-thirty-fifths of the limestone bed on the
20.04 acres and that the defendant John J. Sullivan, by virtue
of the agreement made by him with the defendant Smith, has
the right to take and remove the limestone in question by
means known as open quarrying; that the land may be sold
subject to such rights. It is from this portion of the judg-
ment that the appeal was taken to the Appellate Division,
which resulted in an affirmance of the judgment of the Trial
Term.

We are of opinion that the construction placed upon the
exception and reservation in question cannot be sustained.

The case of *Armstrong* v. *Lake Champlain Granite Co.*
(147 N. Y. 495) is relied upon by both parties, to some extent,
on this appeal. The case cited involved the construction of a
deed which conveyed "All the mineral and ores (on the same
premises), with the right to mine and remove the same; also
the right to sink shafts and sufficient surface to erect suitable
buildings for machinery and other buildings necessary and

usual in mining and raising ores; also the right of ingress and egress for mining purposes, and to make explorations for minerals and ores, saving reservations to the State of New York."

The question involved in that case was whether a bed of granite, overlaid by soil from four to six feet deep on land that was thickly wooded, could be removed by open quarrying. ANDREWS, Ch. J., reviewing the English and American cases, reached the conclusion that under the form of conveyance already quoted open quarrying was not permissible. The learned judge said: "Upon the authorities we think we should not be justified in holding that granite was not embraced in the reservation or grant of 'mineral' in the absence of qualification. * * * But the words do not stand alone, but are connected with the context which clearly indicates, in our judgment, that the parties had in view only such minerals as are to be got by mining in the ordinary sense of that term; that is, by underground and not by open workings."

The only question decided was that the provisions of the deed in question read together contemplated only underground mining and not open workings. The suggestion as to the possible construction of a reservation or grant of " minerals," in the absence of qualifying words so as to embrace granite, was purely *obiter*.

The question presented in the case at bar is whether the exception and reservation in question is broad enough to include a bed of limestone and the open quarrying of the same. So far as we are advised the question presented is open in this court. It may be well enough to quote once more the reservation to be construed: " Excepting and reserving therefrom unto the parties of the first part, their heirs and assigns forever, all mines and minerals which may be found on the above piece of land, with the right of entering at any time with workmen and others to dig and carry the same away."

The first point to be observed is that the word " minerals," as used in this reservation, is coupled with " mines " by the

conjunctive — " all mines and minerals." This shows that the grantor had in mind the reservation of mines and their contents, to wit, " minerals." This is further emphasized by the word " found "—" which may be found on the above piece of land." It appears in the findings that immense boulders and ledges of limestone crop out on the surface of these premises, and it would be a strained and unnatural construction to assume that the language commented upon above refers to stone lying open to the view, and that the same may be removed by open quarrying and blasting, destructive of the surface, under the reservation of " All mines and minerals which may be found." We have here qualifying words quite as persuasive and controlling as those that influenced the court in *Armstrong* v. *Lake Champlain Granite Co.* (*supra*).

The reservation of John La Farge must be read as referring to minerals in mines found, with the right to enter at any time with workmen and others to dig and carry the same away. That is, dug out of the earth by means of mines and mining. (*Darvill* v. *Roper*, 3 Drewry, 294.) The word " dig " has a technical meaning, when the context is considered, and does not apply to open quarrying and blasting.

It is true, under scientific definition, the world of matter is divided into three general subdivisions — animal, vegetable and mineral. It is equally true that in the ordinary phraseology of mankind a mineral is a word limited largely to metallic substances.

It is quite impossible to harmonize all that has been written on this subject in the cases and text books. In construing reservations and grants it is necessary, if possible, to ascertain the intention of the parties. In many of the English cases, where acts of Parliament were involved, the decision went off on the language employed in the various acts. There are a number of well-considered cases which involve substantially the question here presented.

In *Countess of Listowel* v. *Gibbings* (9 Ir. C. L. Repts. 223), under a reservation of " all mines and minerals," it was held that limestone was not included in the reservation. The

learned judge writing in that case said : " I do not deny that, if it appeared clearly to be the intention of the parties, to be collected from the instrument, that limestone quarries should pass by the words ' mines and minerals,' they might pass ; but words are to be understood in their natural and usual meaning, unless there be a clear indication that they are, in a particular case, intended to have a more or less extended signification. Usually, ' mine' imports a cavern or subterraneous place, containing metals or minerals, and not a quarry ; and ' minerals' mean ordinarily metallic fossil bodies, and not limestone."

In *Brown* v. *Chadwick* (7 Ir. C. L. Repts. 101), under a reservation of " all mines, minerals and other royalties whatsoever," it was held not to include open limestone quarries. The learned court said at page 108 : " The distinction between a mine and a quarry appears to me to be this — a mine is a place where the substratum is excavated, but the surface is unbroken ; whereas in a quarry the surface is opened, and the material, in the present case limestone, is exposed and raised."

In *Darvill* v. *Roper* (3 Drewry, 294), under a reservation of " mines of lead and clay and other mines and minerals," it was held that limestone was not included within the reservation ; it was further held that minerals meant substances of a mineral character, which could only be worked by means of mines, as distinguished from quarries. The learned court pointed out in this case that if the scientific definition of the word " minerals " was applied it would mean " every portion of the soil, not merely the limestone rock, but the gravel, the pebbles, all, even to the very substance of the loam or mould which forms the soil, would be included." The court also rejected the second meaning, often attributed to the word " minerals " as a metalliferous substance, for the reason that it was not broad enough to meet the questions presented in conveyances and leases. The court then uses the following language : " There is then a third sense in which the word minerals may be used, viz., all such substances as are dug out

of the earth by means of a mine, a meaning which without being opposed to the other senses, is in accordance with the derivation and etymology of the word; for whatever may be the origin of the word ' mine,' minerals is clearly derived from mines. A mineral is etymologically, properly a substance dug out of the earth by means of a mine."

It is thus apparent that each case must be decided upon the language of the grant or reservation, the surrounding circumstances and the intention of the grantor if it can be ascertained. The adoption of arbitrary definitions in reference to mineral substances buried in the earth is not permissible. The word " mineral " standing by itself might under a broad, general, popular definition embrace the soil and all that is to be found beneath its surface; under a strict definition it might be limited to metallic substances, and under a definition coupling it with mines it covers all substances taken out of the bowels of the earth by the processes of mining.

We are of opinion that under the exception and reservation in question John La Farge did not reserve the right to himself, his heirs and assigns forever to the limestone on the premises conveyed and to conduct open quarrying for the purpose of taking possession thereof.

The judgment of the Appellate Division should be reversed and the judgment of the trial court so modified as to conform to the views expressed in this opinion, and as modified affirmed, with costs to the plaintiff in Appellate Division and in this court. If parties cannot agree on form of modified judgment same can be settled before BARTLETT, J., on notice.

CULLEN, Ch. J., GRAY, O'BRIEN, HAIGHT, VANN and WERNER, JJ., concur.

Judgment accordingly.