878 F.2d 570
 INTERNATIONAL SALT COMPANY, Appellee, Cross-Appellant,
v.
GEOSTOW, A Limited Partnership, Geostock New York Holdings,
Inc., Northeastern Waste Services, Inc., Bear Development
Company, Inc., James Hagan, William Selden, Cynthia Selden,
and William Austin Wadsworth, Appellants, Cross-Appellees.
 Nos. 848 to 850 and 952, Dockets 88-7959, 88-7961, 88-7963
and 88-9013.
 United States Court of Appeals,
Second Circuit.
 Argued March 15, 1989.
Decided June 16, 1989.
 
 Kenneth A. Payment, Rochester, N.Y. (A. Paul Britton and Harter, Secrest & Emery, Rochester, N.Y., on the brief) for appellee, cross-appellant Intern. Salt Co.
 Gregory P. Photiadis, Buffalo, N.Y. (Duke, Holzman, Yaeger & Radlin, Buffalo, N.Y., on the brief) for appellants, cross-appellees Geostow, Geostock New York Holdings, Inc., Northeastern Waste Services, Inc. and Bear Development Co., Inc.
 Alan J. Knauf, Pittsford, N.Y., submitted a brief, for amicus curiae Protect a Clean Environment, Inc. (PACE).
 Before TIMBERS, MESKILL and NEWMAN, Circuit Judges.
 TIMBERS, Circuit Judge:
 
 
 1
 This is an appeal and cross-appeal from an order and judgment entered November 10, 1988 in the Western District of New York, David G. Larimer, District Judge, which granted partial summary judgment in favor of appellee, cross-appellant International Salt Company (International Salt)[1] on Count I of its complaint and declared the rights of the parties in this diversity action to quiet title pursuant to Article 15 of the New York Real Property Actions and Proceedings Law (McKinney 1979). The opinion of the district court dated October 12, 1988 is reported at 697 F.Supp. 1258 (W.D.N.Y.1988).
 
 
 2
 In Count I of the complaint, International Salt sought a declaratory judgment pursuant to 28 U.S.C. Sec. 2201 (1982) with respect to its rights under certain deeds to the use and ownership of the containing chamber created by its underground salt mining operation at Retsof, New York (Retsof Mine). Appellants, cross-appellees Geostow, Geostock New York Holdings, Inc., Northeastern Waste Services, Inc., and Bear Development Co., Inc. (Geostow appellants) had proposed a plan to store incinerator ash in the containing chamber found in sections of the Retsof Mine that they contend are mined-out. They also sought to acquire from certain surface owners their purported ownership interests in the containing chamber.
 
 
 3
 On its motion for summary judgment, the district court held that International Salt is the owner in fee simple of all salt in the mine and that it presently has the exclusive right to use and enjoy the chamber created by its mining operations. The court further held, however, that International Salt does not have a fee simple absolute estate in the containing chamber created by the extraction of salt.
 
 
 4
 Appellants appeal from that part of the judgment which declares that International Salt presently has the exclusive right to use and enjoy the containing chamber in the mine. They assert that summary judgment was improper since there remain genuine issues of material fact regarding primarily whether International Salt has exhausted the commercially mineable salt in certain sections of the mine and thereby has terminated its right to use and enjoy the chamber located in the mine. International Salt asserts, for a number of reasons, that it retains the exclusive right to use and enjoy the chamber and that any factual dispute regarding the exhaustion or abandonment of the mine is not material. International Salt also cross-appeals, asserting that the district court improperly construed the relevant deeds in holding that it does not have a fee simple interest in the containing chamber created by the extraction of salt.
 
 
 5
 For the reasons which follow, we affirm the district court's judgment in all respects.
 
 I.
 
 6
 We shall summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal. We assume familiarity with the district court's published opinion referred to above.
 
 
 7
 International Salt and its immediate predecessor in interest, Retsof Mining Company, for more than 100 years have conducted underground mining of salt at the Retsof Mine. This is said to be the world's largest salt mine. The present mining operation is conducted in one horizontal seam approximately 1,060 feet below ground level. The single mining chamber extends for miles in all directions. The mining activities of International Salt and its predecessor historically included only "first" or "pillar and room" mining, by which salt was extracted horizontally, but large pillars of salt were left behind for structural support. It is undisputed that in the sections that were "first mined" about one third of the original salt deposits remain in the pillars, floor, and ceiling of the containing chamber.
 
 
 8
 The active mining extraction operations are conducted along the eastern and southeastern sides of the mine. The principal entrance to the mine is through the Fuller Shaft, located in the northwestern region of the mine. There are other shafts which are used for ventilation and escape. An extensive series of conveyor belts, roadways, pipes, and electrical cables course through the miles of passageways. International Salt maintains a ventilation system which it asserts uses all parts of the mine for airflow.
 
 
 9
 In 1987, the Geostow appellants announced a plan to store incinerator ash in certain sections of the Retsof Mine which they claimed were mined-out. To implement this underground waste disposal plan, they sought to acquire from the surface owners their property interests in the containing chamber created by the extraction of salt by International Salt and its predecessor. A number of surface owners purported to transfer their interests to the Geostow appellants, subject to the rights of International Salt, "if any". Although the property interests of only a few surface owners are involved in this action,[2] the waste disposal plan encompasses virtually the entire mine.
 
 
 10
 In December 1987, International Salt commenced the instant action chiefly to obtain a declaration of its rights under certain deeds to the use and ownership of the containing chamber at the Retsof Mine. On April 7, 1988, International Salt moved for summary judgment and for a stay of discovery. In a carefully reasoned opinion dated October 12, 1988, as stated above, the district court granted summary judgment in favor of International Salt on Count I; declared the rights of the respective parties; and dismissed all affirmative defenses and counterclaims.[3] The parties stipulated pursuant to Fed.R.Civ.P. 41(a)(1)(ii) to a dismissal without prejudice to the remaining claims. Pursuant to this opinion, an order and judgment was entered November 10, 1988, from which the instant appeal was taken. Appellate jurisdiction was properly invoked. See Frankfort Oil Co. v. Snakard, 279 F.2d 436, 438 (10 Cir.), cert. denied, 364 U.S. 920 (1960); 6 Moore, Taggart & Wicker, Moore's Federal Practice p 54.34, at 54-206 & n. 18 (1988).
 
 II.
 
 11
 We turn first in this case of first impression to the question of whether the original grantors intended to convey to International Salt and its predecessor a fee simple interest in the containing chamber of the mine.
 
 
 12
 We focus on those portions of the original deeds that conveyed to International Salt or its predecessor "all mines, veins, seams and beds of salt" beneath the respective surface estates.[4] The question here presented turns in particular on the meaning of the word "mines". International Salt asserts that the word means a cavity or space which contains minerals and that therefore a fee simple interest in the cavity was conveyed. Appellants assert that no such interest in the cavity was conveyed, since "mines" is synonymous with "veins, seams and beds" and therefore refers only to the mode or manner in which the salt deposits occur.
 
 
 13
 In this diversity action, New York law controls. Instruments creating or transferring an interest in real property must be construed according to the intent of the parties so far as such intent can be gathered from the instrument read as a whole and is consistent with the applicable rules of law. N.Y. Real Prop. Law Sec. 240(3) (McKinney 1989); Matzell v. Distaola, 105 A.D.2d 500, 501-02, 481 N.Y.S.2d 453, 455 (3d Dep't 1984), leave to appeal denied, 64 N.Y.2d 608, 489 N.Y.S.2d 1025, 478 N.E.2d 209 (1985); Allen v. Cross, 64 A.D.2d 288, 291-92, 409 N.Y.S.2d 865, 868 (4th Dep't 1978). Where the language of the conveyance is unclear, the court should look to the surrounding circumstances and situation of the original parties to the conveyance. Loch Sheldrake Assocs., Inc. v. Evans, 306 N.Y. 297, 304, 118 N.E.2d 444, 447 (1954); Distaola, supra, 105 A.D.2d at 501-02, 481 N.Y.S.2d at 455; see also Brady v. Smith, 181 N.Y. 178, 185, 73 N.E. 963, 965 (1905) ("[E]ach case must be decided upon the language of the grant or reservation, the surrounding circumstances and the intention of the grantor if it can be ascertained".).
 
 
 14
 In applying these principles to the instant case, the district court carefully examined the various deeds involved and concluded that no fee simple interest in the cavity was conveyed by the use of the term "mines". The court began with an examination of the 1952 conveyance to International Salt under part of the "Selden tract". It concluded that the language which stated that it was the intent of that instrument to grant "mineral rights" clearly indicated that a fee simple interest in the salt only and not in the containing chamber was conveyed. The court then turned to the remaining deeds and found that in light of the principle of noscitur a sociis, and in light of other language in the deeds, use therein of the term "mines" also was intended to convey a fee simple interest in the salt only.
 
 
 15
 The court found that the term "mines" has more than one meaning. In one sense the term is used to describe an underground excavation or place for the purpose of removing minerals; but in a another sense it is used to describe the vein, lode or deposit of a mineral. Groves v. Terrace Mining Co., 340 S.W.2d 708, 711 (Mo.1960); Costigan, Handbook on American Mining Law Sec. 39, at 143-46 (West 1908); 54 Am.Jur.2d Mines and Minerals Sec. 4, at 187-88 (1971); 58 C.J.S. Mines and Minerals Sec. 1, at 14 (1948); see generally Annotation, What is Included Within Term "Mine" as Used in Written Instrument, 92 A.L.R.2d 868 (1963). The precise meaning of terms relating to mines and mining "usually depends upon the context in which they are used". 37 N.Y.Jur. Mines and Minerals Sec. 1, at 442 (1964).
 
 
 16
 In construing the deeds, the district court properly focused on the specific language, at least to the extent that the language reflected the intent of the parties. The relevant New York case law is of little assistance in indicating the context in which the parties acted. The deeds vary somewhat in their language, but the court was correct in examining all of them together and drawing clues from the different deeds. Virtually the same language of conveyance appears in each of the deeds. It is likely that International Salt or its predecessor drafted all the deeds.
 
 
 17
 That the deeds use language normally associated with conveyance of a fee simple interest (e.g., convey "forever") does not help us decide whether the cavity or only salt was conveyed, since a fee simple interest can be conveyed solely in a mineral resource. Lillibridge v. Lackawanna Coal Co., 143 Pa. 293, 299-300, 22 A. 1035, 1036 (1891); Annotation, Grant, Reservation, or Exception as Creating Separate and Independent Legal Estate in Solid Minerals or as Passing Only Incorporeal Privilege or License, 66 A.L.R.2d 978, 980-84 (1959). Somewhat more helpful to International Salt was the use in the deeds of the word "premises" in referring to what was being conveyed. While the word "premises", however, typically is used to refer to a place or location, it is not limited to such reference. Indeed, in the 1952 conveyance under part of the Selden tract referred to above, the language "TO HAVE AND TO HOLD the herein granted premises" was used even though the deed expressly conveyed mineral rights only.
 
 
 18
 Also opposed to International Salt's construction of the deeds are all of the other arguments well assembled by Judge Larimer. The critical language does not use the term "mines and minerals" which would convey both the cavity and minerals, but instead uses the term "mines ... of salt". (emphasis added). Cf. White v. Miller, 200 N.Y. 29, 34-35, 92 N.E. 1065, 1067 (1910) (exception in deed of "mines and minerals" indicates that the subject of the exception is "the property in the minerals ... and in the mines from which they may be obtained"); Brady, supra, 181 N.Y. at 182-83, 73 N.E. at 964 (reservation in deed of " 'all mines and minerals' " indicates that "the grantor had in mind the reservation of mines and their contents, to wit, 'minerals' "). Further, "mines" in the relevant deeds is included in a string with "veins", "seams", and "beds" and appears to serve merely as a synonym for those terms. We agree with Judge Larimer in his observation that a contrary view would require reading the deeds as though they said "mines and veins, seams, and beds of salt". This is not the way they were drafted.[5]
 
 
 19
 In short, we hold that the district court properly determined that, since the use in the deeds of the term "mines" was intended to be descriptive of the mode in which the salt occurs rather than denoting the place where it is found, International Salt has a fee simple interest in the salt only and does not have a separate fee interest in the excavation cavity or containing chamber.III.
 
 
 20
 We turn next to the question of whether, on a motion for summary judgment, the district court properly held that International Salt presently retains the exclusive right to use and enjoy the cavity in the mine.
 
 
 21
 The majority American rule is that an owner of the fee simple interest in minerals or mineral rights has the exclusive right to the use and enjoyment of an excavated cavity so long as the mine has not been exhausted or abandoned. United States v. 43.42 Acres of Land, 520 F.Supp. 1042, 1045 & n. 9 (W.D.La.1981); Ellis v. Arkansas Louisiana Gas Co., 450 F.Supp. 412, 421 (E.D.Okla.1978), aff'd on other grounds, 609 F.2d 436 (10 Cir.1979), cert. denied, 445 U.S. 964 (1980); see Moore v. Indian Camp Coal Co., 75 Ohio St. 493, 499-500, 80 N.E. 6, 7-8 (1907); Webber v. Vogel, 189 Pa. 156, 159-60, 42 A. 4, 4-5 (1899); Costigan, supra, Sec. 139, at 503; 58 C.J.S., supra, Sec. 162(a), at 338-39. A mineral owner's interest in the situs of the minerals is "regarded as being in the nature of an estate determinable, which reverts to the surface landowner by operation of law at some time subsequent to removal of the [minerals]". United States Steel Corp. v. Hoge, 503 Pa. 140, 148, 468 A.2d 1380, 1384 (1983); see Chartiers Block Coal Co. v. Mellon, 152 Pa. 286, 296-97, 25 A. 597, 599 (1893).
 
 
 22
 Closely related to this is the rule that in the absence of contractual language to the contrary, an owner of subsurface minerals has the right, until the mine is exhausted, to use the mine chamber for transportation of minerals from adjacent lands so long as the surface owners are not disturbed. Moore, supra, 75 Ohio St. at 501, 80 N.E. at 8; Kormuth v. United States Steel Co., 379 Pa. 365, 368-70, 108 A.2d 907, 909-10 (1954), cert. denied, 349 U.S. 911, (1955); Westerman v. Pennsylvania Salt Mfg. Co., 260 Pa. 140, 144-46, 103 A. 539, 540-41 (1918); Lillibridge, supra, 143 Pa. at 303-08, 22 A. at 1037-38; Robinson v. Wheeling Steel & Iron Co., 99 W.Va. 435, 436-37, 129 S.E. 311, 312 (1925); 58 C.J.S., supra, Sec. 159(d), at 335-36; Annotation, Right of Owner of Title to or Interest in Minerals Under One Tract to Use Surface, or Underground Passages, in Connection with Mining Other Tract, 83 A.L.R.2d 665, 685-89 (1962). Typically it has been held that a mine is exhausted when no "mineable" or "recoverable" minerals remain. Westerman, supra, 260 Pa. at 145, 103 A. at 540-41; United States Steel Corp. v. Commonwealth, 17 Pa.Commw. 594, 598-99, 333 A.2d 486, 488 (1975); Tate v. United Fuel Gas Co., 137 W.Va. 272, 282, 71 S.E.2d 65, 71 (1952).
 
 
 23
 In the instant case, the court held that, since it is undisputed that substantial amounts of salt remain in the containing chamber underlying the tracts involved, and since there is no language in the deeds limiting the quality or duration of International Salt's interest in the salt, International Salt presently has the exclusive right to the use of the chamber.
 
 
 24
 Appellants claim that summary judgment was improper because there was a genuine issue of material fact, i.e., whether International Salt had exhausted the commercially mineable salt in certain sections of the mine. In support of this claim, they rely on affidavits of experts which allege that "second mining" of the salt in the pillars, sometimes called "pillar robbing", is effectively impossible. The reason for this, so the affidavits allege, is that such mining would cause a collapse of the mine's roof which in turn would cause substantial subsidence on the surface and massive flooding of the mine due to the disruption of underground aquifers located above. Appellants further claim that there remain genuine issues of material fact as to whether International Salt actually intends to conduct second mining and whether International Salt uses or reasonably needs to use the containing chamber in certain parts of the mine.
 
 
 25
 International Salt relies on affidavits which allege that second mining is feasible and that it does intend to extract salt in certain older sections of the mine. Its primary response to appellants' claim, however, is that none of the alleged factual issues raised is material. In particular, International Salt claims that, since virtually all of the deeds grant International Salt rights to mine the salt and the deeds are unrestricted in either extent or duration, there is no need to demonstrate the present feasibility of second mining. Moreover, International Salt claims that, since there are now untapped seams of salts located approximately 51 feet below the present mining level, there can be no dispute that the salt in the mine has not been exhausted.
 
 
 26
 The New York decisional law provides little or no guidance in this area. We nevertheless agree with the district court's determination that the majority American rule that a grantee of subsurface minerals, until exhaustion of the mine, has the exclusive right to use the excavated chamber in connection with its mining activities in adjacent tracts is applicable in New York.
 
 
 27
 It is undisputed that International Salt continues actively to work parts of the Retsof Mine. It also is undisputed that untapped beds of salt which belong to International Salt lie below the present mining level and that future access to these salt beds will necessitate at least partial use of the existing containing chamber. In light of these undisputed facts, we agree with the district court that International Salt presently has the exclusive right to use and enjoy the containing chamber. This is so because the mine as a whole has not been abandoned nor have its salt deposits been exhausted. The commercial feasibility of second mining, as well as the present or future use by International Salt of particular sections of the mine, therefore are not material issues. As a matter of law, International Salt continues to retain the right to use the underground chamber in connection with its ongoing salt extraction activities.
 
 
 28
 Moreover, this result is compelled by the language of the original grants to International Salt and its predecessor which typically conveyed a "perpetual and unrestricted right ... to mine and remove the salt herein conveyed by any subterranean process". As the district court found, the clear import of such language is that International Salt is not required to follow any particular timetable in its exploitation of the salt deposits or to employ any specific mining technology in its operations. E.g., Marvin v. Brewster Iron Mining Co., 55 N.Y. 538, 551-52 (1874) (the phrase "by any subterranean process" indicates that the right to mine was "not to be confined to the modes in vogue when it was first acquired"). International Salt therefore does not forfeit its interests in the containing chamber simply because it has chosen to conduct its current extraction activities in a certain manner or to concentrate its efforts in one section of the mine rather than another. E.g., Moore, supra, 75 Ohio St. at 500-01, 80 N.E. at 8:
 
 
 29
 "It is ... illogical and inconsistent, and would be impracticable and unjust, to hold that as fast as the mineral is taken out, the resulting empty space should revert to the owner of the upper strata. Such a narrow and technical interpretation of the grant would result in embarrassments to the mining industry which would be intolerable".
 
 
 30
 See also Westerman, supra, 260 Pa. at 144-45, 103 A. at 540-41 (temporary suspension of mining activities in parts of mine does not cause reversion of interest in chamber so long as mine owner is acting in good faith and is mining in the customary manner).
 
 
 31
 In short, in view of International Salt's present salt extraction activities as well as the presence of as yet untapped salt deposits located below the present mining level,[6] we hold that summary judgment in favor of International Salt on the issue of its exclusive right to use and enjoy the containing chamber in the Retsof Mine was proper.IV.
 
 To summarize:
 
 32
 We hold that International Salt has a fee simple interest in the salt but that it does not have a separate fee simple interest in the chamber itself. We also hold that International Salt presently has the exclusive right to use and enjoy the containing chamber in the Retsof Mine.
 
 
 33
 Affirmed.
 
 
 
 [1]
 International Salt Company, named as plaintiff in the district court and as appellee, cross-appellant on appeal, unless otherwise stated will be referred to as "appellee" or "International Salt" in this opinion
 The surface owners named as defendants in the district court (James Hagan, William Selden, Cynthia Selden, and William Austin Wadsworth), together with the Geostow defendants (Geostow, Geostock New York Holdings, Inc., Northeastern Waste Services, Inc., and Bear Development Co., Inc.), and as appellants, cross-appellees on appeal, unless otherwise stated will be referred to collectively as "appellants" in this opinion.
 
 
 [2]
 Supra note 1
 
 
 [3]
 The district court granted International Salt's motion to stay discovery. Since we affirm the judgment of the district court granting summary judgment in favor of International Salt, there is no need to reach the order granting the stay of discovery
 
 
 [4]
 The relevant portions of the deeds here involved are set forth at length in the appendix to the district court's opinion. 697 F.Supp. at 1270-74. We note only that the critical language conveying to International Salt or its predecessor "all mines, veins, seams, and beds of salt" virtually identical in all of the deeds
 
 
 [5]
 We also find persuasive the caption on two of the original deeds:
 "GRANT OF MINERAL RIGHTS". These deeds not only use the same language as all the others to describe what is conveyed but, as with the 1952 Selden tract deed discussed above, they also refer to what was conveyed as the "premises".
 
 
 [6]
 Citing Westerman, supra, appellants assert that the presence of mineable salt in the lower seams in the Retsof Mine is irrelevant to International Salt's present right to use the containing chamber in the upper seam. We disagree
 In Westerman, the plaintiff surface owner filed a bill to enjoin the defendant mining company from using a mine passageway located under his farm. The coal owned by the defendant was located in four veins. First mining had been completed in the upper vein (the Upper Freeport vein) only. The main passageway to the mine passed through the excavation cavity in the Upper Freeport vein located beneath the plaintiff's land and was being used to transport coal from other land. 260 Pa. at 142-44, 103 A. at 540.
 In holding that the defendant had the right to use the underground passageway to transport coal, the court observed:
 "Of course, defendant's right in plaintiff's farm will terminate as soon as the mineable coal therein has been removed; and the right in the upper vein will cease when all of such coal has been taken therefrom".
 Westerman, supra, 260 Pa. at 145, 103 A. at 540-41. In quoting this language, appellants suggest that Westerman stands for the general proposition that a mineral owner's right to use an excavated cavity terminates upon exhaustion of the minerals in the particular seam through which the cavity passes, whether or not there exist other mineable minerals located in seams below.
 A closer examination of the facts in Westerman, however, indicates that the case does not stand for such a broad proposition. What is most crucial is the court's observation that as a factual matter, the passageway could not be used in mining the coal in the lower veins, presumably due to some physical or technological limitation. Id. at 143, 103 A. at 540. It is logical that the Westerman defendant's right to use the passageway would cease when all the coal was exhausted in the Upper Freeport vein since--as a factual rather than as a legal matter--the passageway could not thereafter be used in connection with mining the coal located elsewhere, i.e., in the three lower seams.
 In the instant case, appellants acknowledge that as a factual matter the excavation cavity in the upper seam of salt in the Retsof Mine can be used for access to the beds of salt located below the present mining level. In contrast to the situation in Westerman, therefore, since the existing excavated cavity in the instant case still can be used in connection with mining the salt located in the lower seams, International Salt's right to use the cavity will not cease with the exhaustion of the minerals in the upper vein.