**INTEGRATED WASTE SERVICES, INC., and Bear Development Company, Inc., Plaintiffs–Appellants,**

v.

**AKZO NOBEL SALT, INC., f/k/a Akzo Salt, Inc., Defendant–Appellee.**

No. 551, Docket 96–7507.

United States Court of Appeals, Second Circuit.

Argued Nov. 21, 1996.

Decided April 29, 1996.

Donald G. McGrath, Buffalo, NY (Stephen F. Szymoniak, Falk & Siemer, L.L.P., Buffalo, NY, of counsel), for Plaintiffs–Appellants.

Kenneth A. Payment, Rochester, NY (A. Paul Britton, Harter, Secrest & Emery, Rochester, NY, of counsel), for Defendant–Appellee.

Before CARDAMONE and CALABRESI, Circuit Judges, and POOLER, District Judge.*

CALABRESI, Circuit Judge:

Plaintiffs-appellants Integrated Waste Services, Inc. and Bear Development Company, Inc. (collectively "Developers") appeal from a summary judgment entered April 16, 1996 in favor of defendant-appellee Akzo Nobel Salt, Inc. ("Akzo") in the United States District Court for the Western District of New York (Larimer, *C.J.*). The judgment dismissed the Developers' claims for negligence, strict liability, nuisance, trespass, and gross negligence arising out of the accidental collapse and inundation of Akzo's salt mine in Retsof, New York. We hold that because Akzo owed no duty of care to the Developers to preserve the underground mining cavities in usable condition, the decision in favor of Akzo on the Developers' claims for damage to the mine cavities was appropriate. We, however, vacate the portion of the judgment below that dismissed the Developers' claim for surface subsidence damages resulting from the mine collapse and remand that claim for further proceedings.

## BACKGROUND

This case involves land in Retsof, New York that was being mined for salt by Akzo.[1] The Developers, hoping to create an incinerator ash repository in the mine shafts made by the salt operation, bought surface property interests in the land housing the mine. The respective rights of the Developers and Akzo were previously determined by this court in *International Salt Co. v. Geostow,* 878 F.2d 570 (2d Cir.1989), *affirming* 697 F.Supp. 1258 (W.D.N.Y.1988) (Larimer, *J.*). We there held that the original grants of mineral rights to Akzo's predecessor gave it fee simple ownership of all the salt in the mine as well as the exclusive right to present use and enjoyment of the mine cavity. *Id.* at 577 We also concluded that possession of the mining chambers would revert to the surface owners when the mine was exhausted or abandoned. *Id.* Both parties to this appeal agree that under that precedent, and given the terms of the original conveyances, Akzo could employ any available or future techniques in the extraction of salt from the mine and could take salt out on any timetable it chose.[2] *See id.* at 576. At the rate of

---

* The Honorable Rosemary S. Pooler, of the United States District Court for the Northern District of New York, sitting by designation.

1. The Developers and Akzo are both successors in interest to the original conveyancers of mineral rights. Since they both stand in the shoes of their predecessors, they are, for convenience, occasionally referred to in this opinion as if they were parties to the original deeds.

2. Typical of the conveyances is the deed from James W. Wadsworth, Jr. and Alice H. Wadsworth to the Retsof Mining Company, dated August 2, 1930, granting

removal obtaining when the mine collapsed, the mine would have been in operation for more than 200 years. The right to the exhausted cavities would then have reverted to the Developers.

On March 1, 1992, in order to exploit the commercial value of portions of the mine shaft for ash storage before the end of all mining operations, the Developers entered into an agreement with Akzo ("Agreement"). This Agreement gave Akzo an option to buy the Developers' reversionary property rights and in exchange obligated Akzo to make royalty payments to the Developers if Akzo pursued the ash storage enterprise. Akzo, however, was not required to do anything if it chose to terminate the Agreement before closing on its purchase of the Developers' interests. In the interim, and as part of the price of the option, Akzo made mortgage payments on the Developers' property.

In March 1994, a portion of the mine cavity collapsed. The collapse allegedly occurred as a result of Akzo's use of a small-pillar mining technique[3] that is claimed to have been ill-suited to this particular mine.[4] Water quickly inundated the mine and rendered it unusable either for mining or storage. Shortly thereafter, in February 1995, Akzo exercised its right to terminate the Agreement. After the accident and the termination, the Developers brought this diversity action against Akzo, stating claims for negligence, strict liability, nuisance, trespass, and gross negligence. They sought compensation for damages both to their reversionary interest in the mining cavities and to their surface property.

The district court first dealt with the reversionary interests. On the negligence-based claims, the court granted Akzo summary judgment, holding that Akzo owed no duty to the Developers to preserve the cavities. *Integrated Waste Servs., Inc. v. Akzo*

*Nobel Salt, Inc.*, 921 F.Supp. 1037, 1041–42 (W.D.N.Y.1996). On the strict liability claims, the district court also entered summary judgment for Akzo, but on a different basis, concluding that "plaintiffs' proof d[id] not indicate that the risk of collapse could not have been eliminated through the exercise of reasonable care." *Id.* at 1045. As to all claims, the district court stated as an alternative ground for its grant of summary judgment the fact that the Developers could not, with reasonable certainty, establish lost profits damages for the unrealized ash storage project. The present value of the cavities, the court held, belonged to Akzo alone. *Id.* at 1042–45.

With respect to surface damage, the court noted Akzo's willingness to pay substantiated claims but still gave summary judgment to Akzo because the Developers had failed to come forward with specific evidence of such surface damage. *Id.* at 1046.

The Developers challenge the determinations of the district court that Akzo owed no duty to preserve the cavities for the Developers; that Akzo was not strictly liable for engaging in an ultrahazardous mining activity; that the Developers could not prove damages to their subterranean interests with reasonable certainty; and that the Developers presented no evidence of surface damage. On appeal, the Developers apparently abandon all of their other claims (*e.g.* trespass and nuisance).

## DISCUSSION

We review a grant of summary judgment *de novo*, taking the evidence in the light most favorable to the party opposing it. *Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir.1995). The party moving for summary judgment must establish that no genu-

---

all mines, veins, seams and beds of salt, together with a perpetual and unrestricted right ... to mine and remove the salt herein conveyed by any subterranean process without liability of any kind or form to the owners of the surface, in, upon or under.

3. Until shortly before the collapse, the Retsof mine had been worked by use of a large-pillar technique. This left approximately one third of

the mine's salt in support pillars. Small-pillar mining involves the removal of some salt from these support pillars where it appears that the geological features of the mine will nonetheless provide adequate support.

4. Akzo concedes negligence for purposes of its summary judgment motion, while preserving its right to challenge negligence should the case go to trial.

ine issue of material fact exists and that the undisputed facts establish the movant's right to judgment as a matter of law. *Id.* at 1060–61. We find that Akzo has met that burden with respect to its liability for damage to the cavities in the Retsof mine, but not with respect to the surface claims.

## I. Akzo's Liability for Damage to the Mine Cavity

Like the district court, we view duty as the central and dispositive issue in assessing the Developers' suit for damages to the mine cavities. The Developers acknowledge that Akzo has no duty to preserve the cavities under the language of the original mineral conveyances. But they invite us to imply a term to this effect in the granting deeds. Alternatively, they urge us to create a new common law duty of care that would require mineral licensees to preserve such cavities. We read the original conveyances of salt to Akzo's predecessors as placing the risk of mine shaft destruction on the surface land owners. Furthermore, we have no reason to believe that the New York Court of Appeals would imply a cavity preservation term in the original deeds or would create such a duty at common law.[5] Because we hold that Akzo operated under no duty to preserve usable mine cavities for the Developers, Akzo cannot be held liable for damages to the cavities, whether such damages are sought under theories of negligence or of strict liability.

### A. Negligence

■ In order to establish a *prima facie* case of negligence under New York law, a claimant must show: "1) the existence of a duty flowing from defendant to plaintiff; 2) a breach of this duty; 3) a reasonably close causal connection between the contact and the resulting injury; and 4) actual loss, harm or damage." *Febesh v. Elcejay Inn Corp.,* 157 A.D.2d 102, 104, 555 N.Y.S.2d 46, 47 (1st Dep't 1990), *appeal denied,* 77 N.Y.2d 801, 566 N.Y.S.2d 586, 567 N.E.2d 980 (1991). In the case before us, the second and third requirements are either conceded for pur-

poses of this appeal or present no problem. Because we find that the first imperative, the existence of a duty, is not met, we need not reach the fourth, which the district court also found lacking.

■ To establish a duty on the part of Akzo, the Developers argue that their right to surface support, reserved to them by operation of common law, *Marvin v. Brewster Iron Mining Co.,* 55 N.Y. 538, 556 (1874), as a practical matter made it necessary for Akzo to preserve pillar-supported cavities. This, they say, gave the Developers an implicit right to cavity preservation and thereby created a duty on Akzo. We disagree.

While preserving and supporting the cavities might well have been an appropriate, or perhaps even the only, means of maintaining surface support, this fact cannot create any rights in the Developers beyond those that they already had. The right to surface support thus cannot give the Developers an interest in the cavities which, under *Westerman v. Pennsylvania Salt Mfg. Co.,* 260 Pa. 140, 103 A. 539 (1918) and our prior decision in *International Salt,* were not theirs. Any other holding would in effect mean that whenever, by negligently damaging a plaintiff's property, a defendant also inevitably harms his own property, that defendant could be made to compensate the plaintiff not only for the injury to what belonged to the plaintiff but also for the additional damage done to what was the defendant's. Not surprisingly, the Developers cite us to no authority supporting such a remarkable result. And the fact that the plaintiff has an expectancy in the defendant's property—that the defendant's current will, for example, leaves the plaintiff the very property that defendant's negligence destroyed—in no way alters matters.

It might be different, of course, if the reversionary rights that the Developers retained had any substance. But the Developers concede that, under the original conveyances, "Akzo was not obligated to pursue any particular mineral technology or timetable for development of the mine." Appellants'

---

5. We note, in passing, that it is the Developers, seeking the creation of a new duty, who have brought this action in the federal courts. We

also note that neither party has asked us to certify this, or any other issue, to the New York Court of Appeals.

Brief on Appeal at 7 n. 5. The district court correctly held that this would permit Akzo to use extraction techniques that would intentionally destroy the cavities. It concluded that the Developers and their predecessors, therefore, could not have had any reasonable expectation that the cavities would revert to them intact and usable. *Integrated Waste,* 921 F.Supp. at 1041–42. The district court sensibly rejected the Developers' invitation to imply a common law duty that would render Akzo liable for doing through negligence what it had a right to do intentionally.

The parties heatedly dispute whether there are available mining techniques that would be destructive of the mining cavities, as suggested by the district court, or whether such a technique could have been contemplated by the original conveyors. The dispute centers chiefly around whether currently available so-called solution mining techniques, which involve injection of water into the mining cavity, would leave usable cavities. This argument misses the point. It doesn't matter what solution mining would or would not do to the cavities, for Akzo could have used *any* available mining techniques, like the second mining process discussed in *Westerman,* 103 A. 539, which involves destruction of support pillars and intentional collapse of the cavity. Indeed the technique originally employed by Akzo would itself have eventually resulted in compression and elimination of the cavities. Since Akzo was permitted, under the conveyances, to use these or any yet-to-be-developed mining technique that would involve elimination of usable cavities, it could destroy the cavities without violating a duty to those who might benefit should Akzo instead have chosen mining methods that would have left the cavities intact.

While Akzo's lack of duty would seem to dispose of the Developers' negligence claims, there remains an issue to be discussed. "No duty" is often simply another term for what, traditionally, was called assumption of risk. *See Turcotte v. Fell,* 68 N.Y.2d 432, 438, 510 N.Y.S.2d 49, 52, 502 N.E.2d 964 (1986) (assumption of risk " 'is simply a confusing way of stating certain no-duty rules' ") (quoting Fleming James, Jr., *Assumption of Risk: Unhappy Reincarnation,* 78 YALE L.J. 185, 187–88 (1968)). And when New York, by statute, adopted comparative negligence, it abolished not only contributory negligence as a complete defense, but also assumption of risk. Under the statute, liability is split between plaintiffs and defendants based on the relative culpability and causal significance of their conduct.[6] Such cost splitting occurs even where some or all of the parties involved are free from fault. *See Arbegast v. Board of Educ.,* 65 N.Y.2d 161, 167, 490 N.Y.S.2d 751, 756, 480 N.E.2d 365, 369 (1985) (noting that the statute requires apportionment of damages even in situations where " 'the conduct of one or more of the parties will be found to be not negligent' ") (quoting legislative history).

Akzo's lack of duty to the Developers is, in this case, based on the fact that the Developers' predecessors, in effect, accepted the risk of destruction of the cavities. Does this mean that section 1411 requires that the damages be split? We think not.

We do not doubt that there are situations in which "no duty" really means assumption of risk and in which, therefore, splitting may be appropriate. But New York courts have not read section 1411 to require cost splitting in all instances. In situations where it seemed equitable and sensible to place the entire risk of a particular activity on one party, New York courts have not hesitated to do so. Whatever the merits of such decisions in cases where the intentions of the parties were not clear, there is no doubt that section 1411 in no way precludes parties from *expressly* agreeing to bear all of a potential loss, thereby negating any duty that would otherwise be owed to them.

6. *See* N.Y. C.P.L.R. § 1411 (McKinney 1996) ("Section 1411"), which provides:

In any action to recover damages for personal injury, injury to property, or wrongful death, the culpable conduct attributable to the claimant or to the decedent, including contributory negligence or assumption of risk, shall not bar recovery, but the amount of damages otherwise recoverable shall be diminished in the proportion which the culpable conduct attributable to the claimant or decedent bears to the culpable conduct which caused the damages.

Thus, in *Arbegast,* 490 N.Y.S.2d at 757–58, 480 N.E.2d at 370–72, the New York Court of Appeals held that, even under the comparative negligence statute, express assumption of risk still operates as an absolute bar to recovery in both negligence and strict liability causes of action. Express assumption of risk was there defined as an "agreement in advance that defendant need not use reasonable care for the benefit of plaintiff and would not be liable for the consequence of conduct that would otherwise be negligent." *Id.* 490 N.Y.S.2d at 757, 480 N.E.2d at 371. The principle formulated in *Arbegast* has been applied in a variety of contexts. *See, e.g., id.* 490 N.Y.S.2d at 757–58, 480 N.E.2d at 370–72 (schoolteacher assumed risk of riding donkey for school benefit through express consent); *Turcotte,* 510 N.Y.S.2d at 52–53, 502 N.E.2d 964 (professional jockey assumed certain risks of horse racing through voluntary consent); *Schneider v. Revici,* 817 F.2d 987, 995 (2d Cir.1987) (patient expressly assumed risks of experimental treatments, thereby dissolving doctor's duty to treat patient according to medical community's accepted standards).

We think that the rationale articulated by the New York Court of Appeals in *Arbegast* and its progeny governs the case before us. The Developers' acceptance of the risk was express and clear. The district court properly held that the conveyances imposed no cognizable duty on Akzo to preserve usable cavities for the Developers. The original conveyors, perhaps because they did not foresee the now-emergent commercial uses of abandoned mine cavities, made no effort to constrain the buyers' behavior with respect to the cavities. And they clearly did not contemplate any liability for destruction of the cavities. The entire risk of cavity collapse was, therefore, as a matter of contract, laid at the feet of the Developers.

Since, moreover, there is no real controversy as to the plaintiffs' contractual assumption of risk, summary judgment for the defendant was appropriate. *See Arbegast,* 490 N.Y.S.2d at 758, 480 N.E.2d at 371–72; *Maddox v. City of New York,* 66 N.Y.2d 270, 279, 496 N.Y.S.2d 726, 730, 487 N.E.2d 553, 557 (1985) (an injured professional baseball player's assumption of risk of participation in the sport could be determined as matter of law because "on the evidentiary materials before the court no fact issue remains for decision by the trier of fact").

Because we agree that the parties had, by contract, placed all risk of harm to the cavities on the surface land owners, we are confident that New York courts would respect that allocation even under a comparative negligence regime.[7]

### B. Strict Liability

■ The Developers also argue that Akzo's employment of small-pillar mining at the Retsof mine was an ultrahazardous activity for which Akzo should be held strictly liable. The district court held otherwise. The determinative factor for the district court, *see Integrated Waste,* 921 F.Supp. at 1045, and the issue argued to us here by the parties, was whether the risk of collapse could have been eliminated by the exercise of reasonable care. We doubt that ultrahazardous activity liability can be negated categorically by demonstrating that occasionally the same damage may also occur as a result of a defendant's negligence. But we need not reach that issue, just as we do not need to consider whether subterranean damages can be fixed with reasonable certainty in this case. For we hold that, with strict liability as with negligence, Akzo owed no duty to the Developers to preserve the cavities usable and intact.

**7.** While some commentators regard the conscionability of such agreements as an open question, *see, e.g.,* W. Page Keeton et al., Prosser & Keeton on the Law of Torts § 68, at 482–84 (5th ed.1984) [hereinafter Prosser & Keeton on Torts], the New York Court of Appeals has not found such terms generically unacceptable. It observed that "when [Section 1411] was enacted, it had long been the law that a contractual limitation of liability for negligence or other fault of a

party seeking to be relieved of his ordinary responsibility did not violate public policy." *Arbegast,* 490 N.Y.S.2d at 757, 480 N.E.2d 365. We do not exclude the possibility that under some circumstances exculpatory or indemnificatory agreements may be deemed unconscionable. *See Henningsen v. Bloomfield Motors, Inc.,* 32 N.J. 358, 161 A.2d 69 (1960). We have no reason, however, to think that this agreement would be so regarded by the New York courts.

■ The same principles of duty and assumption of risk that precluded the Developers' negligence claim also bar their strict liability claim. The requirement of duty and the liability apportionment mandated by New York's comparative negligence statute apply to ultrahazardous activity and other strict liability claims as they do to negligence. *See Lippes v. Atlantic Bank of New York,* 69 A.D.2d 127, 137, 419 N.Y.S.2d 505, 511 (1st Dep't 1979) (section 1411 intended "to reach any breach of legal duty or fault by the defendant, including *but not limited to* negligence in any degree, breach of warranty, strict liability and violation of a statutory duty") (citation and internal quotation marks omitted); *Arbegast,* 490 N.Y.S.2d at 754, 480 N.E.2d at 367–68; *Doundoulakis v. Town of Hempstead,* 42 N.Y.2d 440, 451, 398 N.Y.S.2d 401, 406, 368 N.E.2d 24, 28–29 (1977). And the contractual exception to the usual splitting of liability obtains for ultrahazardous activity liability just as it does for negligence. *See Arbegast,* 490 N.Y.S.2d at 754, 480 N.E.2d at 367–68; *see also* Restatement of Torts (Second) § 523 (1977) (assumption of risk as absolute bar to recovery applicable to claims for ultrahazardous activity liability); Prosser & Keeton on Torts § 79, at 566 (5th ed.1984) (noting the general rule that strict liability claim can be set aside where it is clear that plaintiff "encounters the risk pursuant to a contract with the defendant or pursuant to any kind of consensual arrangement ... [under which] it was ... understood that there would be no liability in the absence of negligence").

■ It follows that our holding that such a consensual arrangement exists in this case precludes the Developers' strict liability claim as a matter of law. Summary judgment is accordingly affirmed on the Developers' strict liability claims for damages to the Retsof mine.[8]

## II. Akzo's Liability for Surface Damages to Developers' Property

■ Akzo, in an affidavit provided to this court, essentially concedes liability for substantiated surface damages resulting from the inundation of the salt mine. Akzo further purports to be paying all such claims. Declaration of Kenneth A. Payment In Support of Motion for Summary Judgment Dated July 27, 1995. But Akzo argues that the Developers' failure to present Akzo with a private claim for surface damages somehow precludes their suit for such damages. There is, however, no requirement that aggrieved parties exhaust available private remedies before going to court. The Developers' surface damages claims are not therefore barred simply because they did not approach Akzo directly with a demand for such damages.

The district court nonetheless denied recovery since it found that the record before it was devoid of any evidence of surface damages to the Developers' property. We disagree. Akzo, by challenging the Developers' proof on the issue of surface damages, did meet its burden of pointing to a gap in plaintiff's proof on a material issue. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The Developers were therefore required to substantiate their pleading demand for surface damages in order to avoid summary judgment. *See* Fed.R.Civ.P. 56(e) ("[T]he adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–51, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986) (nonmovant must point to significant probative evidence creating issue of fact over which reasonable minds could disagree).

■ The Developers have not explicitly directed our attention to any evidence on point. But they nevertheless have created a genuine issue of fact on the surface damages issue by presenting in the record two reports that describe widespread and ongoing surface subsidence damages as a result of the inundation of the Retsof salt mine. New

---

8. Our affirmance of summary judgment on the strict liability claim is on grounds different from those specifically relied upon by the district court. We have authority to affirm the district court's dismissal on any ground supported by the record. *See Shelden v. Barre Belt Granite Employer Union Pension Fund,* 25 F.3d 74, 80 (2d Cir.1994).

York State Department of Environmental Conservation Impact Analysis, August 1995; Leo L. Van Sambeek, Predicted Ground Settlement Over the Akzo Nobel Retsof Mine, October 1994. While these reports do not single out the Developers' own land or attempt to place a dollar value on the damage to these parcels, they are sufficient to undermine the conclusion of the district court that "[n]o proof of any damage to surface lands owned by plaintiffs has been forthcoming." *Integrated Waste*, 921 F.Supp. at 1046. The record on this point was poorly developed by the plaintiffs, even for the stage in the proceedings at which judgment was rendered, and we can well understand the district court's reluctance to let the case go further. Nevertheless, we hold that what the Developers showed was sufficient to preclude summary judgment on the issue of surface damages. Though meager, it is enough to permit them to introduce more specific evidence at trial. We accordingly reverse and remand the decision of the court below with respect to this issue alone.

## CONCLUSION

The summary judgment of the district court is affirmed as to all claims dealing with damage to the mine cavities and is vacated and remanded for trial of the claims arising from surface subsidence.